**Kevin Michael CAY, Plaintiff-Appellant,**

v.

**W.J. ESTELLE, Jr., Director, Texas Department of Corrections, et al., Defendants-Appellees.**

No. 84–2362.

United States Court of Appeals, Fifth Circuit.

May 12, 1986.

Vicki Birenbaum, Sewell & Riggs, Houston, Tex. (Court-appointed), for plaintiff-appellant.

Robin Sanders, Scott Klippel, Mike Lynch, Asst. Attys. Gen., Austin, Tex., for defendants-appellees.

Before WISDOM, REAVLEY and JOHNSON, Circuit Judges.

REAVLEY, Circuit Judge:

Plaintiff Kevin Michael Cay, an inmate at the Texas Department of Corrections (TDC), brought an action under 42 U.S.C. § 1983 (1982) against several prison officials, alleging principally that he was physically assaulted in violation of the Eighth Amendment. After an evidentiary hearing, a magistrate recommended dismissal of Cay's complaint based on a determination of the credibility of the witnesses. The district court adopted the magistrate's recommendation and Cay now appeals. Although we hold that a district court may make limited credibility assessments to decide whether a suit is frivolous under 28 U.S.C. § 1915(d) (1982), we reverse because the assessments in this case fell outside the scope of the court's discretion.

## BACKGROUND

On October 7, 1982, Cay was granted leave to file a complaint *in forma pauperis* (IFP) pursuant to 28 U.S.C. § 1915(a). The complaint alleged that on August 3, 1982, when Cay asked to be relieved from work duties because of a back injury, he was beaten severely and placed in solitary confinement. The complaint named as defendants W.J. Estelle, Director of TDC; T.D. Durbin, a TDC Warden; J.T. Gremen, an assistant warden; W.B. Hagan, a correctional officer at TDC; and L.P. Allen, also a correctional officer at TDC. Also named as defendants were two TDC inmates: a Mr. Matthews and a Mr. Williams. The defendants denied the allegations, demanded a jury trial and raised the defense that Cay had failed to state a claim.

An evidentiary hearing was held on September 28, 1983.[1] The testimony diverged significantly.

### a. Testimony for Plaintiff

Cay testified that his work squad was assigned to work in the fields on the morning of August 3, 1982. As the squad was preparing to load into the transportation trailer, Cay stopped to remind Warden Gremen, who was standing nearby, of a conversation the two had had the day before. In this conversation, Cay had informed the Warden that he, Cay, had a long-standing back injury, and the Warden had agreed to investigate Cay's records and reassign him to lighter work if necessary. While Cay was addressing the Warden, another inmate, James Smith, objected to riding on the trailer and jumped from it.

The Warden ordered Captain Hagan, who was standing nearby, to take Cay and Smith and lock them up. As they were proceeding to a back gate, Hagan began using abusive language. When Cay responded, somewhat in kind, Hagan struck him. A moment later, Hagan was joined by Lieutenant Allen and two inmates. The four beat Cay unconscious with blackjacks (used by the guards) and lead pipes (used by the inmates), inflicting him with various injuries including a black eye, bruises, a busted nose, and a busted mouth.

Afterwards, Cay was taken to the infirmary where he was treated with iodine and bandaids by an inmate. (The medical report stated that Cay was treated for cuts and scratches.) Cay was then placed in a solitary confinement cell along with several other inmates, without clothes, a mattress, blankets or sheets. Three days later, he was charged with refusing to work, striking an officer, using vulgar language and other charges. After a disciplinary hearing,[2] he was given fifteen days in solitary provided that he would forget about the incident. Cay then spent only seven days in solitary.

Two witnesses testified on behalf of Cay. The first, inmate James Morse, testified that he observed Captain Hagan, Lieutenant Allen and two inmates beat Cay. He also testified, however, that he only saw one of the inmates use a weapon (a blackjack) and that he did not see Cay unconscious. A second inmate, Horace Dewberry, confirmed Cay's testimony that he and the other inmates in solitary had no clothes, mattresses or blankets. According to Dewberry, he could see into the cell once a day when he was taken to the showers. A third inmate was supposed to present testimony as to Cay's physical impairment from the beating, but, through an apparent mixup, the wrong inmate was brought to the hearing.

### b. Testimony for Defendants

Warden Durbin testified briefly as to the procedures used during hearings before the prison's Disciplinary Committee. He stated that he did not know Cay and that he had never had a reason to harm Cay or to do anything to cause him harm. Durbin also testified that he was not present during the incident.

Captain Hagan's testimony, after his memory was refreshed by a disciplinary report written after the incident, differed in almost every respect from Cay's testimony. Hagan testified that Cay was on the trailer when he jumped off and announced to Hagan (not the Warden) that he (Cay) was not going to work. Cay refused two orders to return to the building and began to yell and curse. After refusing to obey a

---

1. Prior to the hearing, Cay filed a first amended complaint in which additional constitutional deprivations were alleged. No action was taken on his request to amend. The parties assumed at the evidentiary hearing that these additional claims were being treated as a separate action. We assume likewise. Cay also filed a motion seeking to subpoena various witnesses to testify at the evidentiary hearing. The magistrate limited Cay to three witnesses at the hearing.

2. Cay complained at the hearing that Captain Hagan, who brought the disciplinary charge, sat on the Disciplinary Committee. This fact was disputed. Apparently, it was not disputed that Lieutenant Allen, who was also involved in the beating, did sit on the committee.

third order, Cay began hitting Hagan in the chest. Hagan and Allen, who was standing nearby, subdued Cay by themselves, without the use of weapons, then took him to the infirmary for treatment of minor scratches and bruises. Hagan also testified that, although he did not personally observe Cay while he was in solitary, prisoners were normally issued clothes, mattresses and blankets while so confined.

## c. *The Magistrate's Recommendation*

Following the hearing, the magistrate filed a Memorandum and Recommendation. He stated that the hearing was held pursuant to Fed.R.Civ.P. 12(d) to determine whether Cay had "establish[ed] that his claims have sufficient prima facie merit to justify the expense of litigation." He explicitly acknowledged that the Memorandum's findings of fact where "based in part on conflicting testimony, ... and that [he] ... assessed the credibility and demeanor of the witnesses and the inherent probabilities of inconsistencies in the testimony received." The magistrate concluded that the "[p]laintiff cannot present evidence that he was subjected to physical brutality and since he received treatment for his injury, there was no 'deliberate indifference' ... to his medical need." He therefore recommended dismissal of Cay's cause of action.

The magistrate's Memorandum and Recommendation was sent to the parties. It notified both parties that a failure to file written objections to the proposed findings and recommendations contained in the report within ten days would bar them from attacking the factual findings on appeal. Cay received the report on December 24, 1983. On December 28, 1983, inmate John Pussey mailed a motion for extension of time to file objections on Cay's behalf to the district court and the Attorney General's office. (Pussey claimed to be providing Cay with "legal assistance.") The motion was returned because it had not been signed by Cay. On December 30, 1983, Cay mailed a Motion for Amended and/or Additional Findings of Fact. Because of

insufficient postage, the district court did not receive the motion until February 10, 1984. The motion was, however, received by the Attorney General's office on January 3, 1984. The district court subsequently dismissed the action. Cay now appeals.

## DISCUSSION

Cay contends primarily that it is improper to dismiss a civil rights action before trial when material, conflicting testimony is presented at an evidentiary hearing, requiring the magistrate to make an assessment of the credibility of the witnesses. If the dismissal was made under Federal Rules of Civil Procedure 12(b)(6) or 56, as Cay assumes, he would prevail by showing that the evidence at the hearing raised a material fact issue. But, as we discuss below, the dismissal in this case may be properly characterized as a dismissal under § 1915(d), which allows dismissal of an IFP proceeding if the district court determines that the action is frivolous or malicious. Determinations under § 1915(d) are fundamentally different from pretrial dismissals under the Federal Rules. Some assessment of credibility is within the broad discretion provided district courts under § 1915(d). In this case, however, we conclude that the court abused its discretion.

## I.

We must first consider the defendants' argument that Cay's appeal is foreclosed by *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir.1982) (en banc). In *Nettles*, this court held that:

> the failure of a party to file written objections to proposed findings and recommendations in a magistrate's report [within ten days] ... shall bar the party from attacking on appeal factual findings accepted or adopted by the district court except upon grounds of plain error or manifest injustice.

*Id.* at 410. *See also Thomas v. Arn*, —— U.S. ——, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). The defendants argue that the motion for extension of time submitted by inmate John Pussey on behalf of Cay, filed

on December 30, 1983, and the motion for amended and/or additional findings of facts, filed on February 10, 1984, were insufficient both as to time of filing and specificity to secure compliance with *Nettles.*

Ordinarily, we would agree with the defendants. Cay is challenging the factual findings of the magistrate, not his legal conclusions, *cf. Nash v. Black,* 781 F.2d 665, 667 (8th Cir.1986) (whether a complaint is legally frivolous is question of law, not fact), and *Nettles* made it clear that the ten-day rule would apply to pro se parties as well as parties represented by attorneys. *Nettles,* 677 F.2d at 410. A district court, however, has the discretionary authority to allow a party to file objections after the ten-day period. *See* Fed.R.Civ.P. 6(b). Since there is nothing in the record to the contrary, we assume that the district court exercised its discretion and allowed the filing of the February 10, 1984 motion. While defendants argue that Cay's objection fails to meet the *Nettles* requirement that the findings objected to be specifically identified, 677 F.2d at 410 n. 8, we do not consider the objections contained in the February 10 motion to be so general as to preclude review of the magistrate's report. Cay's appeal is therefore not foreclosed by *Nettles v. Wainwright.*

## II.

In his brief, Cay asserts that his original complaint alleged that the defendants deprived him of his constitutional rights by beating him, failing to provide him with adequate medical care both immediately after the beating and later while he was in solitary confinement, placing him in solitary under inhumane conditions and denying him access to mail. On appeal, the defendants argue that the claims regarding solitary confinement and access to mail were never properly raised in the complaint because they were not specific enough and because they were made against unnamed "TDC officials" and "the officers that work in solitary." (The evidentiary hearing also failed to identify the appropriate defendants.) We agree. While pro se complaints must be construed liberally, and the complainant given the opportunity to add specifics, allegations of misconduct must at least name a defendant or so specify the official's position that his identification is easily ascertainable. Thus, the only claims properly before the district court were those relating to the alleged beating and the alleged denial of medical care immediately following the beating.

## III.

Turning to the merits of Cay's appeal, we must determine initially whether the dismissal of his action was made under § 1915(d), Fed.R.Civ.P. 12(b)(6) or Fed.R.Civ.P. 56. This determination has important consequences, as the standards governing dismissal in each instance are not necessarily the same. Following the lead of *Spears v. McCotter,* 766 F.2d 179 (5th Cir.1985), we conclude that an IFP proceeding can be dismissed as frivolous under § 1915(d) at whatever point it becomes clear that merit is lacking. We also conclude under *Spears* that the district court referred this case to the magistrate for disposition generally, including use of § 1915(d) to recommend that Cay's pauper status be revoked if the magistrate determined that the suit was frivolous. As part of our discussion, we think review of the § 1915 process is appropriate.

### A.

A grant of leave to proceed *in forma pauperis* is made by considering only a petitioner's economic status. *See* 28 U.S.C. § 1915(a); *Watson v. Ault,* 525 F.2d 886, 891 (5th Cir.1976). To ensure that the privilege of proceeding *in forma pauperis* is not abused, Congress authorized dismissal of an IFP proceeding under 28 U.S.C. § 1915(d) if it is "frivolous or malicious." The point at which dismissal is appropriate under § 1915(d) has been a source of confusion. *See, e.g., Wartman v. Branch 7, Civil Division, County Court, Milwaukee County, State of Wisconsin,* 510 F.2d 130 (7th Cir.1975). *See generally* Federal Judi-

cial Center, *Recommended Procedures for Handling Prisoner Civil Rights Cases in the Federal Courts* 54, 57–58 (1980).

In the Fifth Circuit a district court may dismiss *sua sponte* an IFP proceeding as frivolous after filing but before service based on an examination of the complaint. While pro se pleadings must be construed liberally, *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), close scrutiny of the complaint may be properly made at this stage to determine whether any defendants and claims should be dismissed as frivolous.[3] *See Green v. McKaskle*, 788 F.2d 1116 (5th Cir.1986). It is not always easy, however, to determine whether a claim is frivolous simply by examining the complaint: prisoner complaints are notoriously difficult to decipher. If the frivolousness of a complaint is not facially apparent, it is "incumbent upon the court to develop the case and to sift the claims and known facts thoroughly until completely satisfied either of its merit or lack of same." *Jones v. Bales*, 58 F.R.D. 453, 464 (N.D.Ga.1972), *aff'd on basis of the district court's reasoning*, 480 F.2d 805 (5th Cir.1973).

To aid its development of the factual basis of a complaint, a district court may send a questionnaire to a prisoner before service requiring him to specify in greater detail the nature of his claims. *Watson v. Ault*, 525 F.2d 886, 893 (5th Cir.1976). The questionnaire is then made a part of the pleadings. Use of these questionnaires is standard practice in this circuit, and, even though pro se pleadings must be liberally construed, a significant number of complaints are usually dismissed before service upon examination of the complaint and the questionnaire.

■ As this court made clear in *Spears v. McCotter*, 766 F.2d 179 (5th Cir.1985), the district court's *sua sponte* authority to dismiss under § 1915(d) does not end with service. *See also Brown v. Schneckloth*, 421 F.2d 1402, 1403 (9th Cir.) (per curiam), *cert. denied*, 400 U.S. 847, 91 S.Ct. 95, 27 L.Ed.2d 85 (1970). Because a "magistrate's findings and recommendations [may] prove of greater aid than a prisoner's written answers on a questionnaire," 766 F.2d at 182, *Spears* authorized magistrates to hold an evidentiary hearing to determine if a suit is frivolous under § 1915(d) or fails to state a claim under Fed.R.Civ.P. 12(b)(6). If the magistrate determines that the claim is frivolous, he may recommend to the district court that the prisoner's *in forma pauperis* status be revoked. *Spears*, 766 F.2d at 180 n. 1. Although a *Spears* hearing should not be necessary in all, or even most, cases, consideration under § 1915(d) after service of process and expansion of the record may be preferable in some instances. *See Anderson v. Coughlin*, 700 F.2d 37, 41 (2nd Cir. 1983) ("expansion of the record protects the unskilled litigant and enables the court to make an informed decision regarding the merits of an action by reference to the reality of the situation rather than by speculating as to the nature of the claim").[4]

---

**3.** It is important at this stage that the district courts review each of a prisoner's allegations to determine whether they adequately state a claim against each defendant. Prisoner complaints often make allegations against numerous defendants which should not survive scrutiny under recent Supreme Court decisions, which require a prisoner making allegations under the Eighth and Fourteenth Amendments to allege facts sufficient to establish that prison officials were deliberately indifferent to his rights. *See, e.g., Daniels v. Williams*, —— U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (Fourteenth Amendment); *Davidson v. Cannon*, —— U.S. ——, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986) (same); *Whitley v. Albers*, —— U.S. ——, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (Eighth amendment).

**4.** Also useful in this regard is a procedure developed by the Tenth Circuit. In *Martinez v. Aaron*, 570 F.2d 317 (10th Cir.1978), the court approved a district court's order that prison officials investigate the facts surrounding a civil rights suit by inmates to construct "an administrative record ... to enable the trial court to ... make a determination [of frivolity] under section 1915(a)." *Id.* at 319. The trial court had required the defendants to attach all relevant reports to their answers. *See also Hardwick v. Ault*, 517 F.2d 295, 298 (5th Cir.1975) (alluding to use of a "special report" filed by prison officials in response to prisoner's claim).

Regardless of the means used to develop the factual basis[5] of a claim, dismissal under § 1915(d) is appropriate whenever it becomes clear that an IFP complaint is without merit.

### B.

While a district court may dismiss an IFP proceeding whenever it determines that the complaint is frivolous, before or after service, Cay argues that the dismissal in this case was made not under § 1915(d) but instead under Fed.R.Civ.P. 12 or Fed.R. Civ.P. 56. We do not agree. First, while neither the district court nor the magistrate denominated Cay's suit as frivolous, *Spears* stated clearly that "a district court need not specifically term a prisoner's suit 'frivolous' to merit dismissal under § 1915(d)." *Spears,* 766 F.2d at 181. *See also Irving v. Thigpen,* 732 F.2d 1215, 1216 n. 2 (5th Cir.1984). Second, as in *Spears,* the magistrate in this case sought to determine whether the pro se plaintiff could "establish that his claims have sufficient prima facie merit to justify the expense of litigation." *Spears,* 766 F.2d at 181 n. 3. This invites a consideration and ruling under § 1915(d). *Id.* Thus, as in *Spears,* "[s]tripping this record to legal essentials, we perceive that the district court referred this case to the magistrate for disposition, including, upon the development of [Cay's] claim, use of the authority vested by 28 U.S.C. § 1915(d) to recommend that [Cay] be denied pauper status if his suit be found frivolous." *Spears,* 766 F.2d at 181. *See also Brown,* 421 F.2d at 1403 (dismissal under § 1915(d) is "preferable procedure" as opposed to use of summary judgment procedures).

### IV.

The magistrate explicitly acknowledged that there was conflicting testimony presented at the hearing and that he made his findings of fact regarding the beating after determining the credibility of the wit-

nesses. Cay argues that this action changed the hearing into a trial on the merits and that he had not agreed to trial before a magistrate. He also argues that making determinations of credibility at this stage are inappropriate to resolve conflicts in oral testimony. Although we have determined that the dismissal in this case was made under § 1915(d) rather than the Federal Rules, Cay's arguments are still relevant to § 1915(d) dismissals. Thus, we must determine whether credibility assessments are appropriate in the context of § 1915(d). For the reasons discussed below, we conclude that while a district court may consider credibility to a limited extent in making a § 1915(d) determination, it was error to have done so here.

### A.

In *Green v. McKaskle,* 788 F.2d 1116, 1120 (5th Cir.1986), we emphasized "the uniqueness of a § 1915 determination." Such a determination is of a "fundamentally different nature" than proceedings under the Federal Rules of Civil Procedure. *Id.* at 1120 (quoting *Anderson v. Coughlin,* 700 F.2d 37, 43 (2nd Cir.1982)). The system of notice pleading embodied in the Federal Rules rests on the idea that one may sue now and discover later what his claim is. Section 1915(a), on the other hand, because it provides a special benefit—free access to the courts—requires that due consideration be given to the conservation of scarce judicial resources. *See id.* Although Congress justifiably enacted § 1915 to allow indigent persons access to the courts so that their rights may be vindicated, "there is no constitutional right to the expenditure of public funds and the valuable time of federal courts to prosecute an action which is totally without merit." *Collins v. Cundy,* 603 F.2d 825, 828 (10th Cir.1979).

The court's explanation in *Jones v. Bales* of the special considerations involved in

---

5. With a judicial officer and witnesses on hand, the parties could, of course, agree to proceed to trial on the merits. The magistrate or judge could then choose to withhold a final § 1915(d) ruling pending more familiarity with the complainant's case.

making determinations of frivolousness under § 1915(d) bears repeating here.

There are compelling reasons for allowing courts broader dismissal powers in forma pauperis suits—especially damage suits brought by convicted prisoners—than in other cases. Persons proceeding in forma pauperis are immune from imposition of costs if they are unsuccessful; and because of their poverty, they are practically immune from later tort actions for "malicious prosecution" or abuse of process. Thus indigents, unlike other litigants, approach the courts in a context where they have nothing to lose and everything to gain. The temptation to file complaints that contain facts which cannot be proved is obviously stronger in such a situation. For convicted prisoners with much idle time and free paper, ink, law books, and mailing privileges the temptation is especially strong. As Justice Rehnquist has noted, "Though [an inmate] may be denied legal relief, he will nonetheless have obtained a short sabbatical in the nearest federal courthouse." *Cruz v. Beto,* 405 U.S. 319, 327, 92 S.Ct. 1079, 1084, 31 L.Ed.2d 263 (1972) (dissenting).

The Federal Rules of Civil Procedure are inadequate to protect the courts and defendants—who it should be remembered pay for their defense—from frivolous litigation from indigent prisoners. The Rules are liberal; they are designed so that most cases will actually go to trial if the parties so desire. Under current standards, Rule 12 motions to dismiss are rarely properly granted. The liberal approach of the Rules is probably desirable, but the rules contemplate litigants who are limited by the realities of time and expense. They also contemplate litigants with a basic respect for accuracy. As Judge Duniway has writ-

ten, "[w]e know from sad experience with habeas corpus and 2255 cases that imprisoned felons ... do not hesitate to allege whatever they think is required in order to get themselves even the temporary relief of a proceeding in court." *Weller v. Dickson,* 314 F.2d 598, 602 (9th Cir.1963) (concurring opinion). A reasonably intelligent prisoner with a willingness to misrepresent facts can often avoid both 12b dismissal and summary judgment, although he actually has no chance of eventual success in his suit. Even if summary judgment can be won by a defendant, much expense may already have been suffered by him in retaining counsel to conduct the defense. *Jones,* 58 F.R.D. at 463–64 (citations, footnotes omitted).

Due to such considerations, this circuit has vested district courts with especially broad discretion in making the determination of whether an IFP proceeding is frivolous. *See, e.g., Holloway v. Gunnell,* 685 F.2d 150 (5th Cir.1982); *Watson v. Ault,* 525 F.2d at 891–92; *Jones v. Bales,* 58 F.R.D. at 464. Most other circuits have done likewise. *See, e.g., Anderson v. Coughlin,* 700 F.2d 37 (2d Cir.1983); *Collins v. Cundy,* 603 F.2d 825 (10th Cir.1979); *Milton v. Nelson,* 527 F.2d 1158 (9th Cir. 1976); *Daye v. Bounds,* 509 F.2d 66 (4th Cir.), *cert. denied,* 421 U.S. 1002, 95 S.Ct. 2404, 44 L.Ed.2d 671 (1975); *Hendricks v. Havener,* 587 F.2d 21 (8th Cir.1978); *cf. Boyce v. Alizaduh,* 595 F.2d 948, 951 (4th Cir.1979) ("however broad the discretion may be, it may not be exercised arbitrarily and is limited in a *pro se* case ... by the rule in *Haines v. Kerner* ... and in every case by the language of [§ 1915(d)] itself").

Courts have had difficulty in defining frivolous as it is used in § 1915(d).[6] This

---

6. *See Jones v. Morris,* 777 F.2d 1277 (7th Cir. 1985) (dismissal appropriate if there is no rational argument in law or fact to support the claim for relief); *Martinez v. Aaron,* 570 F.2d 317 (10th Cir.1978) (same); *Rizzo v. Dawson,* 778 F.2d 527 (9th Cir.1985) (dismissal appropriate if the claim has no arguable basis in law or fact); *Sills v. Bureau of Prisons,* 761 F.2d 792

(D.C.Cir.1985) (same); *United States ex rel. Walker v. Fayette Cty,* 599 F.2d 573 (3rd Cir. 1979) (same); *Brooks v. Seiter,* 779 F.2d 1177 (6th Cir.1985) (dismissal appropriate only if it appears beyond doubt that plaintiff can prove no set of facts which would entitle him to relief); *Neary v. Dugger,* 766 F.2d 456 (11th Cir. 1985) (same); *Green v. Black,* 755 F.2d 687 (8th

circuit uses three standards in making § 1915(d) determinations. An IFP proceeding may be dismissed if (1) the claim's realistic chance of ultimate success is slight; (2) the claim has no arguable basis in law and fact; or (3) it is clear that the plaintiff can prove no set of facts in support of his claim. *See Green,* 788 F.2d at 1120 (citations omitted). While we doubt the appropriateness of the third standard, which equates frivolousness with the standard for dismissal under 12(b)(6), *see Anderson,* 700 F.2d at 43, a § 1915(d) dismissal is appropriate under any of these standards.

We have addressed the appropriateness of credibility findings under the above standards in two previous cases. In *Jones v. Bales,* 58 F.R.D. 453, we approved action by a district court dismissing an IFP proceeding because the "plaintiff's allegations simply strain credulity." *Id.* at 465. The district court, relying entirely on the plaintiff's complaint concluded that it would be "almost impossible" for the plaintiff to prove facts necessary to establish his claim. *Id.* The court considered as relevant to its credibility assessment the plaintiff's lack of success in substantiating previous claims. In *Taylor v. Gibson,* 529 F.2d 709 (5th Cir.1976), we considered a magistrate's report which recommended dismissal of a prisoner's complaint because the allegations were "completely beyond belief." *Id.* at 716. Unlike *Jones,* the *Taylor* court had before it supporting affidavits from all parties which substantially conflicted. We reversed the dismissal because the prisoner "was deprived of a hearing at which to present evidence in support of his allegations" and because "[t]he lower court made credibility choices without hearing witnesses testify, without observing their demeanor or hearing their testimony subjected to cross-examination." *Id.*

While *Jones* and *Taylor,* read superficially, appear to reach conflicting results, close analysis reveals that they are in fact consistent. In *Jones,* the court considered the inherent improbability of the general facts alleged by the prisoner, together with his lack of previous success in substantiating other claims, to determine that his allegations were not credible. Other courts have allowed an assessment of the credibility of a prisoner's allegations in similar circumstances. *See Taylor,* 529 F.2d at 717 (complaint which misstates facts that a district court may judicially notice may be dismissed); *Crisafi v. Holland,* 655 F.2d 1305, 1307–08 (D.C.Cir.1981) (complaint which postulates facts of a "wholly fanciful kind" may be dismissed). Determining that it would be almost impossible for a plaintiff to prove certain facts requires a different kind of credibility assessment than the assessments made in *Taylor.* In *Taylor,* the prisoner had presented a plausible story. The magistrate, with only affidavits before him, chose to believe the prison officials over the prisoner, apparently on the basis of the prisoner's prior criminal record. As the *Taylor* court stated, "[f]actual disputes are not so resolved under our system of jurisprudence," *Taylor,* 529 F.2d at 716. Clearly, *Taylor* does not disallow credibility findings; rather, *Taylor* simply requires that a hearing be held before a court can make credibility determinations involving more than the inherent plausibility of a prisoner's allegations. *Spears,* of course, provides for such a hearing.

We conclude from the preceding discussion that credibility assessments are within the sound discretion of a district court making a determination of frivolousness. That discretion is limited, however, by the purpose of a § 1915(d) determination. District courts must remember that they are only determining whether a suit is frivolous, not deciding the case on the merits. Thus, the most important consideration in a § 1915(d) credibility assessment is the inherent plausibility of a prisoner's allegations based on objective factors, rather

Cir.1985) (same); *Anderson v. Coughlin,* 700 F.2d 37 (2nd Cir.1983) (dismissal appropriate if there is little chance of success on the merits in light of various defenses which may be asserted); *Urbano v. Sondern,* 370 F.2d 13 (2d Cir. 1966) (dismissal appropriate if it seems highly unlikely that plaintiff could prove his claim or surmount defendant's defense).

than the demeanor of witnesses or a witness's prior criminal record. A district court, faced with only the pleadings, and perhaps supporting affidavits, may consider credibility as a factor in determining frivolousness only to the extent that it believes a prisoner's allegations are almost impossible to prove, conflict with facts which may be judicially noticed, or postulate facts of a wholly fanciful kind. In addition, where witnesses can be observed and their testimony on direct and cross-examination compared, such as in a *Spears* hearing, credibility may be a factor only to the extent that a district court considers a complainant's change of position when exposed to interrogation or conflicting evidence, major internal inconsistencies in a witness's testimony, or substantial conflicts between the testimony of supporting witnesses.

### B.

In reviewing a magistrate's full credibility assessments, the district judge must consider the verbatim record of the evidentiary hearing. *Hernandez v. Estelle*, 711 F.2d 619 (5th Cir.1983). This "fresh consideration" of the magistrate's findings may be undertaken by listening to a tape recording or reading a transcript of the hearing. *Nettles v. Wainwright*, 677 F.2d 404, 409 n. 5 (5th Cir.1982). When the magistrate recommends that claims or cases be dismissed as frivolous after conducting an evidentiary hearing, however, he may be able to dispense with the necessity of the verbatim review by the district judge if the pertinent evidence is summarized and the conflicts and inconsistencies that demonstrate fabrication and lack of merit are set forth in the magistrate's report. It would be preferable in that case for the district court to state the reasons for the § 1915(d) dismissal. *Cf. Jones v. Morris*, 777 F.2d 1277, 1281 (7th Cir.1985) (practice of supplying statement of reasons "ought to be the norm in all section 1915(d) cases where the basis for dismissal is not evident on the face of the complaint"); *Crisafi v. Holland*, 655 F.2d 1305, 1310 (D.C.Cir.1981) (same); *but see Collins v. Cundy*, 603 F.2d

825, 828 (10th Cir.1979) (requiring statement of reasons in every § 1915 dismissal).

### C.

▮ Applying these rules, we find that the district court abused its discretion in this case. The magistrate stated that he "assessed the credibility and demeanor of the witnesses and the inherent probabilities of inconsistencies in the testimony received." The district court adopted the magistrate's report apparently without a transcript or tape recording of the hearing before him, and the magistrate did not summarize any conflicts or inconsistencies that might demonstrate fabrication. The transcript reveals, however, that Cay's testimony regarding the alleged beating was consistent with the facts alleged in his complaint. It was substantially corroborated by a fellow prisoner. The testimony of both prisoners was inherently consistent, and, while their testimony differed with regard to details, such as the use of weapons and the extent of Cay's injuries, they agreed on the essentials—that Cay was severely beaten by two prison guards and two inmates. Cay's version of the entire incident was not implausible in any way. Any assessment of credibility based on factors other than these, such as demeanor, was inappropriate at this stage of the litigation. The parties clearly differed in their versions of the facts, and it was only for the ultimate trier of fact to determine who was more believable.

### V.

The district court adopted the magistrate's recommendation that Cay's claim that he was denied adequate medical treatment immediately after the beating be dismissed. Cay does not contest the dismissal of this claim, and we affirm. Prison officials are liable under the Eighth Amendment for failure to provide medical treatment only when they are deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251, 261

(1976). Cay's complaint alleged that Captain Hagan intentionally denied him medical attention after the beating. At the hearing, however, Cay admitted that he was taken to the prison infirmary immediately following the altercation and treated for minor injuries. Medical records confirmed his testimony. The magistrate concluded therefore that Cay "received medical care and received it promptly." We agree. Dismissal of this claim was proper under any standard, be it § 1915(d), Fed.R. Civ.P. 12(b)(6) or Fed.R.Civ.P. 56.

## CONCLUSION

Since we affirm the dismissal of Cay's claim of inadequate medical treatment, we remand only for a determination of the merits of his claim of excessive force.

AFFIRMED IN PART and REVERSED IN PART and REMANDED.