Edward Eugene WESSON,
Plaintiff–Appellant,

v.

Lt. Roy OGLESBY, et al.,
Defendants–Appellees.

No. 90–4125
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 5, 1990.

Edward Eugene Wesson, pro se.

Jim Mattox, Atty. Gen., Adrian Young, Asst. Atty. Gen., Austin, Tex., for defendants-appellees.

Before KING, GARWOOD and DUHÉ, Circuit Judges.

KING, Circuit Judge:

Texas prisoner Edward E. Wesson instituted this civil rights action under 42 U.S.C. § 1983 against two named Texas Department of Corrections employees and "others unknown." Proceeding *pro se* and *in forma pauperis*, Wesson raises claims of excessive use of force and denial of medical treatment, and seeks 120 million dollars in damages, as well as other relief, for the defendants' alleged violations of his constitutional rights. The district court dismissed Wesson's suit as frivolous under 28 U.S.C. § 1915(d) based on the recommendations of a United States magistrate. Although we conclude that the district court's findings are based on improper credibility determinations, we nevertheless affirm the court's judgment based on our holding that Wesson has no arguable legal basis to support his claims of constitutional violations.

## I.

Plaintiff-appellant Edward Eugene Wesson (Wesson) alleges in his *pro se* complaint, which we must construe liberally, that he was the victim of malicious and unprovoked assaults by Roy Oglesby (Oglesby) and Larry Turner (Turner), two prison officers employed by the Texas Department of Corrections (TDC). Wesson alleges that on September 29, 1988, he was sitting in the prison dayroom when Oglesby forced him into the main hall, placed him

against the wall, and put a "choke hold" on him that was so tight Wesson temporarily passed out. Immediately after this incident, Wesson was restrained with handcuffs and escorted to the prison infirmary by Turner. Wesson alleges that the handcuffs were applied so tightly that they caused his wrists to swell and bleed.

Complaining of the treatment he received from Oglesby, Turner and others, Wesson filed a grievance with the TDC. The Internal Affairs Division (IAD) investigated the grievance and filed a report indicating that the incident in question arose when Oglesby ordered Wesson to return to his cell. According to the IAD report, Wesson refused, arguing that he wanted a dose of his medication. Oglesby stated that he again ordered Wesson to his cell, telling him that he would receive his medication there. When Wesson again failed to comply, Oglesby took hold of Wesson's arm, and Wesson struggled to pull free. Oglesby restrained Wesson and, with the help of other guards, placed Wesson in handcuffs. Prison records indicate that Wesson sustained no serious injury. The IAD concluded that the use of force under the circumstances was neither inappropriate nor excessive and ordered the investigation administratively closed.

■ Wesson filed this lawsuit *in forma pauperis* (IFP) in the district court on March 20, 1989. He pleaded causes of action under 42 U.S.C. § 1983,[1] claiming that the defendants violated his constitutional rights by using excessive force and by denying him medical care for the injuries he allegedly sustained as a result of the excessive force. Pursuant to 28 U.S.C. § 636(b), the district court assigned a United States magistrate to conduct an evidentiary hearing. Magistrate McKee held a *Spears* hearing, *see Spears v. McCotter*, 766 F.2d 179 (5th Cir.1985), on April 28, 1989, and recommended that Wesson's excessive force claim be dismissed as frivolous under 28 U.S.C. § 1915(d).

Relying on *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), and *Shillingford v. Holmes*, 634 F.2d 263 (5th Cir.1981), the magistrate found that Wesson failed to suffer severe or permanent injuries, that the prison officers' conduct was not grossly disproportionate to the need for action under the circumstances, and that the record contained no evidence of malice. Therefore, concluded the magistrate, Wesson could not maintain an excessive force claim under § 1983.

Wesson objected to the magistrate's findings, raising, among other things, the magistrate's failure to address the issue of the defendants' denial of medical treatment. The magistrate issued a supplemental report that addressed, and rejected, Wesson's claim that he was unconstitutionally denied medical treatment. Wesson again objected; however, the district court, after purportedly conducting a de novo review, adopted the magistrate's reports and dismissed the suit as frivolous. Wesson's appeal is timely.

Wesson complains on appeal of the district court's holding that he is required to show a serious injury. He argues that, if the use of force by prison guards is unnecessary, a constitutional violation is established regardless of the severity of a prisoner's injuries. Wesson also contends, in broad, conclusory terms, that the district court erred in dismissing his § 1983 claim based on denial of medical treatment. We reject both of Wesson's arguments.

## II.

### A. *The Use of Credibility Assessments in 28 U.S.C. § 1915(d) Dismissals*

Before we address the merits of Wesson's arguments on appeal, we are compelled to discuss the manner by which the magistrate arrived at his findings and recommendations. Our review of this record convinces us that the magistrate abused his discretion in conducting the *Spears* hearing

---

**1.** Wesson also pleaded causes of action under state law; however, he did not object when the magistrate failed to address these claims in his recommended findings, and has not briefed the issues on appeal. We therefore conclude that Wesson has waived review of these state law claims.

below by making credibility determinations based on disputed facts that were brought out at that hearing. The district court, in turn, fell short of conducting an adequate de novo review of the magistrate's report after Wesson objected to the recommended findings. Nevertheless, as discussed below, we are able to affirm the district court's judgment without resort to the magistrate's credibility findings. Had this case presented a closer question on the legal viability of Wesson's allegations, however, we would have been forced to vacate the court's judgment and remand for further proceedings.

Congress enacted the IFP statute "to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989). To prevent abuse of the litigation process, however, by plaintiffs who have nothing to lose by filing meritless lawsuits, § 1915(d) authorizes a district court to dismiss an IFP complaint "if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." 28 U.S.C. § 1915(d). The Supreme Court has explained that

> [s]ection 1915(d) is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

*Neitzke,* 490 U.S. at ——, 109 S.Ct. at 1832–33.

■■■ District courts possess broad discretion in determining at any time whether an IFP suit is frivolous. *Wilson v. Lynaugh,* 878 F.2d 846, 849 (5th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 417, 107

L.Ed.2d 382 (1989); *Green v. McKaskle,* 788 F.2d 1116, 1119 (5th Cir.1986). Although district courts are encouraged to employ § 1915(d) procedures, if appropriate, at the earliest possible stages in IFP litigation, dismissal is appropriate only if the court is completely satisfied that (1) the claim's realistic chance of ultimate success is slight, or (2) the claim has no arguable basis in law and fact. *Wilson,* 878 F.2d at 849 (citing *Pugh v. Parish of St. Tammany,* 875 F.2d 436, 438 (5th Cir.1989)).

An IFP complaint that recites bare legal conclusions, with no suggestion of supporting facts, or that postulates facts of an entirely fanciful nature, is a prime candidate for dismissal under § 1915(d). At the same time, however, courts must construe *pro se* pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972). In order to "pierce the veil" of allegations contained in prisoner IFP complaints invoking 42 U.S.C. § 1983, which so frequently are filed pro se, district courts are authorized under 28 U.S.C. § 636(b) to refer such cases to a magistrate "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Spears v. McCotter,* 766 F.2d 179, 180 (5th Cir.1985). We held in *Spears* that a magistrate may conduct an evidentiary hearing, if needed, to flesh out the substance of a prisoner's claims. A *Spears* hearing is " 'in the nature of a motion for more definite statement.' " *Id.* at 181–82.

In *Cay v. Estelle,* 789 F.2d 318 (5th Cir. 1986), we stressed "that while a district court may consider credibility to a limited extent in making a § 1915(d) determination," the court must remember that it is "only determining whether a suit is frivolous, not deciding the case on the merits." *Id.* at 324, 326. We concluded in *Cay*:

> A district court, faced with only the pleadings, and perhaps supporting affidavits, may consider credibility as a factor in determining frivolousness only to the extent that it believes a prisoner's

allegations are almost impossible to prove, conflict with facts which may be judicially noticed, or postulate facts of a wholly fanciful kind. In addition, where witnesses can be observed and their testimony on direct and cross-examination compared, such as in a *Spears* hearing, credibility may be a factor only to the extent that a district court considers a complainant's change of position when exposed to interrogation or conflicting evidence, major internal inconsistencies in a witness's testimony, or substantial conflicts between the testimony of supporting witnesses.

*Id.* at 327.

■ The most important factor in § 1915(d) credibility assessments is "the inherent plausibility of a prisoner's allegations based on objective factors." *Id.* at 326; *Gilbert v. Collins*, 905 F.2d 61, 63 (5th Cir.1990). Thus, if a prisoner's version of the facts underpinning a civil rights action—as contained in his complaint and elaborated upon, if necessary, in a *Spears* hearing—is inherently plausible and internally consistent, a court may not for purposes of a § 1915(d) dismissal simply choose to believe conflicting material facts alleged by the defendants. It is only for the ultimate trier of fact to decide which party is more believable. *Id.* at 327.

■ Applying these principles to the case at hand, we find that the magistrate abused his discretion by adopting the defendants' version of material facts about which the parties clearly differed. Wesson alleged an episode of brutality that violated his rights under the eighth amendment, a scenario that was inherently plausible. To contradict Wesson's allegations that Oglesby and Turner inflicted needless discipline that caused Wesson an injury, the defendants submitted at the *Spears* hearing official TDC records showing that Wesson had disobeyed orders, that a major use of force was necessary to control his recalcitrant conduct, and that he had sustained no injury.

In his Report and Recommendation, the magistrate did not find any of Wesson's factual allegations to be "fanciful;" nor did he summarize any inconsistencies or conflicts within Wesson's own complaint, testimony, or supporting evidence. For example, the magistrate did not suggest that Wesson recanted or modified his allegations when confronted with the TDC records at the *Spears* hearing. Rather, it is clear from his discussion that the magistrate simply accepted the credibility of the defendants' proffered evidence as an accurate portrayal of the incident in controversy. Under *Cay,* this constituted a credibility assessment that the magistrate was not at liberty to make.

■ The district court, in turn, abused its discretion by adopting recommended findings that were clearly based on impermissible credibility assessments. Moreover, the court adopted the magistrate's report and supplemental report apparently without benefit of a transcript or tape recording of the *Spears* hearing. *See Cay,* 789 F.2d at 327 ("In reviewing a magistrate's full credibility assessments, the district judge must consider the verbatim record of the evidentiary hearing … [unless] the pertinent evidence is summarized and the conflicts and inconsistencies that demonstrate fabrication and lack of merit are set forth in the magistrate's report.").

Considering the nascent stage of litigation at which this § 1915(d) dismissal occurred, the proper procedure for the court in the scope of its de novo review would have been to accept as true those facts alleged by Wesson that were inherently plausible and internally consistent. The court then should have determined whether such facts were sufficient to survive the two grounds for IFP dismissals set out in *Wilson* and *Pugh.*

B. *Wesson's Claims*

Although we disapprove of the factfinding conducted by the district court in this case, we may nevertheless affirm the court's judgment if we are able to conclude as a matter of law that, under the most liberal interpretation of Wesson's complaint, his claims of excessive force and denial of medical treatment have no arguable merit.

■ *1. Excessive Force.* For a prisoner to prevail in an excessive force claim, four elements must be proven: (1) A significant injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need, the excessiveness of which was (3) objectively unreasonable, and (4) the action constituted an unnecessary and wanton infliction of pain. *Huguet v. Barnett,* 900 F.2d 838, 841 (5th Cir.1990).[2] According to *Huguet,* these four elements are independent of one another; if the plaintiff fails to carry the burden of proof on any element, his claim perishes.

■ Wesson alleged below that Turner handcuffed him so tightly that his wrists were swollen and bleeding. There are no facts in the record, however, save Wesson's unsupported legal conclusions, to suggest that Turner's conduct constituted "an unnecessary and wanton infliction of pain," the fourth—and most important—*Huguet* element.[3] Wesson admits on appeal that "the handcuffs were applied carelessly." Carelessness, by definition, cannot amount to "wanton" conduct. Moreover, it is settled that negligence is insufficient to support a § 1983 claim. *Daniels v. Williams,* 474 U.S. 327, 329–36, 106 S.Ct. 662, 663–67, 88 L.Ed.2d 662 (1986). Dismissal was proper, therefore, as to Wesson's excessive force claim against Turner.

■ Looking, then, to Wesson's claim against Oglesby, Wesson alleged in his original complaint that, with the intent to "maliciously and sadistically inflict harm," Oglesby placed Wesson in a "choke hold" and applied sufficient pressure to cause Wesson to briefly lose consciousness. Accepting for purposes of review Wesson's conclusory allegations that Oglesby's use of force was excessive, unreasonable, and malicious, we are left with what normally would be a difficult question: What quantum of harm constitutes a "significant injury" under the eighth amendment? We need not embark on this nebulous inquiry, however, because Wesson has abandoned on appeal his contention—if, indeed, he even raised such an issue below—that he suffered a serious or permanent injury stemming from his momentary blackout.[4] He argues instead that "[i]f there is a complete absence of justification for the application of force, the intentional application of any force beyond *de minimis* is unconstitutional." This argument has been squarely addressed and rejected in *Huguet,* 900 F.2d at 841, and we are bound by a prior panel's determination of the issue. *See also Johnson v. Morel,* 876 F.2d 477, 480 (5th Cir.1989) (en banc) (The "use of excessive force does not give constitutional import ... to minor harms.").

■ *2. Denial of Medical Treatment.* Wesson alleged in his original complaint that "when plaintiff got to the unit hospital, they refused to give plaintiff medical treatment." Wesson did not specify who "they" referred to, although it is clear that Wesson did not name any infirmary employees as defendants. In his objections to the magistrate's findings, Wesson explained that the "defendants refused medical treatment by intentionally interfering with treatment."

■ To succeed in his claim under § 1983, Wesson must establish "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct.

2. *Huguet* borrowed the excessive force analysis developed under the fourth amendment in *Johnson v. Morel,* 876 F.2d 477, 480 (5th Cir.1989) (en banc), and applied it to an eighth amendment excessive force claim in a prison context.

3. "[T]he central inquiry in the Eighth Amendment context ... is whether the particular use of force amounts to the 'unnecessary and wanton infliction of pain.'" *Graham v. Connor,* —— U.S. ——, 109 S.Ct. 1865, 1873 n. 11, 104 L.Ed.2d 443 (1989) (citing *Whitley v. Albers,* 475 U.S. 312, 320–21, 106 S.Ct. 1078, 1084–85, 89 L.Ed.2d 251 (1986)).

4. *Huguet* was decided after the district court entered its final judgment dismissing Wesson's claim. However, even under prior Fifth Circuit precedent, *see Shillingford v. Holmes,* 634 F.2d 263, 265 (5th Cir.1981) (three-prong standard for analyzing excessive force claims under the fourteenth amendment's generalized notion of substantive due process), upon which the court based its dismissal, a prisoner alleging excessive force was required to establish "severe injuries," a burden at least as demanding as the *Huguet* "significant injury" standard.

285, 292, 50 L.Ed.2d 251 (1976). We first note the fundamental inconsistency between Wesson's statement in his pleadings below that the defendants escorted him to the prison infirmary, and his claim that these same defendants denied him access to medical treatment. In addition, Wesson's alleged injuries at the time of the incident at issue, swollen wrists with some bleeding,[5] do not constitute such a "serious medical need" that any minor delay caused by the defendants in delivering Wesson to the care of medical personnel could be construed as "deliberate indifference." Wesson concedes on appeal that he was examined by one Nurse Gross for his wrist injuries, and that she told him his wrists would be all right. Wesson's disagreement with this diagnosis cannot support a claim against Turner or Oglesby.

We conclude that Wesson's realistic chance of ultimate success in pursuing a § 1983 claim for denial of medical treatment arising from the alleged incident of excessive force rests between slight and nonexistent. We therefore affirm the district court's dismissal under § 1915(d) of this claim.

### III.

Based on the foregoing reasons, we AFFIRM the judgment of the district court.

AFFIRMED.

---

**5.** In his grievance filed with the TDC, Wesson alleged only swollen wrists.