**Reynaldo HUGUET, Plaintiff–Appellant,**

**v.**

**James BARNETT and J. Horton, Defendants–Appellees.**

No. 89–6016.

United States Court of Appeals, Fifth Circuit.

May 11, 1990.

Reynaldo Huguet, Tennessee Colony, Tex., pro se.

Before GARZA, GARWOOD, and JOLLY, Circuit Judges.

GARZA, Circuit Judge:

Guided by the Supreme Court's decision in *Graham v. Conner,* —— U.S. ——, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) and this Court's decision in *Johnson v. Morel,* 876 F.2d 477 (5th Cir.) (en banc), we hold that the district court properly dismissed Huguet's Section 1983 claim.

## I. The Facts.

This case arises out of a scuffle which took place between Appellant, an inmate at the Texas Department of Corrections ("TDC"), and Appellees, two TDC officers. Reynaldo Huguet filed a civil rights suit, proceeding pro se and in forma pauperis, complaining of excessive use of force.

Huguet filed his action under 42 U.S.C. § 1983 in the United States District Court for the Eastern District of Texas, Tyler Division. Chief Judge William Wayne Justice referred the case to United States Magistrate Judith K. Guthrie pursuant to 28 U.S.C. § 636(b)(1)(A). Magistrate Guthrie held a *Spears* hearing and recommended dismissal under 28 U.S.C. § 1915(d), which allows the dismissal of baseless claims of pro se claimants. The Magistrate made findings of fact and recommendations, which, after a de novo review of the objections raised by the Plaintiff thereto, were adopted by the district court resulting in the action being dis-

missed with prejudice on September 7, 1989.

Appellant, in his pleading and testimony at a *Spears* hearing conducted on March 15, 1989, stated that Defendants Barnett and Horton assaulted him on February 3, 1988, during a routine cell search. The internal affairs report indicates that while Officer Barnett was escorting Huguet away from his cell, so that it could be searched, Huguet began struggling with Barnett. Barnett, with the assistance of Officer Horton, placed Huguet on the floor and leg irons were applied. The medical reports show that initially Huguet refused to be examined. On February 4th, Huguet complained of right elbow pain and swelling when seen by a nurse. Huguet refused a physician's examination on February 5th. Huguet was examined on February 16th and tenderness was noted. Huguet's elbow was x-rayed on March 16th. Dr. Rasberry noted that the elbow might have a chip fracture. The injury was treated as a fracture and placed in a cast. The radiologist did not think it was an actual fracture. The cast was removed one month later. The last notation concerning this incident states that the elbow was normal.

There is some dispute as to the facts surrounding the scuffle. The video camera was not in operation until after the Appellant was already on the ground, which would have been after the time the broken elbow was allegedly suffered. Communication of this injury to the TDC medical staff was less than clear and timely. Appellant's command of the English language, or lack thereof, is in dispute and could justify the less than timely communications.

The best case scenario for Appellant is that the elbow received a slight fracture, subsequently wholly resolved, as the TDC officers placed him on the ground, in an effort to further restrain him.

## II. The Analysis.

The touchstone of this analysis is the Supreme Court decision in *Graham v. Conner*, —— U.S. ——, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), which set forth the principle of evaluating these claims under either Fourth or Eighth Amendment standards rather than Fourteenth Amendment substantive due process standards. The Court specifically mandated avoiding a "generic standard" in these cases, which has resulted in a bifurcation of the case law.

This Court passed on the opportunity to address the Eighth Amendment challenge for cruel and unusual punishment in *Minniefield v. Perkins*[1], when this Court remanded the case for further consideration in light of *Johnson v. Morel*, 876 F.2d 477 (5th Cir.) (en banc). In *Johnson*, the § 1983 plaintiff was an arrestee, which is an important distinction from a convicted prisoner. In light of his status, the case was decided using a Fourth Amendment "reasonableness" inquiry. This Court held that in order for a plaintiff to prevail, on a Constitutional excessive force claim, these three elements must be proven:

1. a significant injury[2], which
2. resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was
3. objectively unreasonable.

In the case before us today, Appellant is a convicted prisoner as opposed to merely an arrestee. Once within the penal system, the Eighth Amendment is the primary source of substantive protection. The Supreme Court in *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), analyzed these Eighth Amendment concerns.

The Cruel and Unusual Punishments Clause "was designed to protect those convicted of crimes,"[3] and consequently the Clause applies "only after the State has complied with the constitutional

---

**1.** Vacated without a published opinion, 888 F.2d 1390 (1989).

**2.** The panel expressed reservation about accepting a nonphysical injury as a significant one.

**3.** *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977).

guarantees traditionally associated with criminal prosecutions." [4]

"Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny, however. 'After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment.' [5] "

Thus, the general requirement is that an Eighth Amendment claimant allege and prove the unnecessary and wanton infliction of pain.

▇▇▇▇▇ Thus, we now take the opportunity to set forth the standard of this Circuit in "excessive force" claims under the Eighth Amendment. In order for a plaintiff to prevail, on an Eighth Amendment "excessive force" claim, these four elements must be proven:

1. a significant injury, which
2. resulted directly and only from the use of force that was clearly excessive to the need, the excessiveness of which was
3. objectively unreasonable, and
4. the action constituted an unnecessary and wanton infliction of pain.

If any one of these elements fails, so too does the plaintiff's claim. The first three elements are to be examined objectively, focusing solely on the injury, the situation, and the force needed. Only after the first three elements have been proven does the analysis shift to determine whether or not the action constituted an unnecessary and wanton infliction of pain. The fourth element is to be evaluated by a subjective analysis of the officer and his state of mind. The precise inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 106 S.Ct. at 1085; *Graham v. Conner*, 109 S.Ct. at 1872. In

making this determination, the trier of fact may draw inferences from its consideration of the first three elements. It must, however, accord prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain internal security." *Whitley*, 106 S.Ct. at 1085, quoting *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979). No matter how significant the injury, how far in excess of the need, and how unreasonable, if the officer's action did not constitute a wanton infliction of pain, the plaintiff's claim must fail. The plaintiff bears the burden of proof on each and every element.

▇▇▇▇ In this case, Appellant's behavior was recalcitrant and the TDC officers responded with force that was in accord with the need. Consequently, Appellant's claim must fail because there is not sufficient evidence to prove the injury resulted directly and only from the use of force that was clearly excessive to the need, nor is there any evidence to prove the officers' actions constituted an unnecessary and wanton infliction of pain. Appellant's failure to prove the required elements has resulted in the demise of his claim.

## III. The End Result.

Under the direction of *Graham*, this Court previously set forth the standard for "excessive force" in cases which invoke the protection of the Fourth Amendment.[6] Today, we have set forth the standard for "excessive force" when the protection of the Eighth Amendment is invoked. The district court may dismiss an in forma pauperis proceeding under 28 U.S.C. § 1915(d) if the claim's realistic chance of ultimate success is slight or the claim has no arguable basis in law or fact. *See Pugh v. Parish of St. Tammany*, 875 F.2d 436, 438 (5th Cir.1989). Under the Eighth Amendment "excessive force" standard which we

---

4.  *Ingraham v. Wright,* 430 U.S. at 671, 97 S.Ct. at 1412.

5.  *Ingraham v. Wright,* 430 U.S. at 670, 97 S.Ct. at 1412 (quoting *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

6.  *Johnson v. Morel,* 876 F.2d 477 (5th Cir.) (en banc).

have set forth, the district court did not err in holding that appellant's claim had no realistic chance of ultimate success. Consequently, the district court is, in all things, AFFIRMED.