Charles E. WILLIAMS,
Plaintiff–Appellant,

v.

J. LUNA, et al., Defendants–Appellees.

No. 89–2076
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Aug. 15, 1990.

Charles E. Williams, Tennessee Colony, Tex., pro se.

Before POLITZ, DAVIS and BARKSDALE, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

## I.

Appellant, Charles E. Williams, a Texas prisoner, sued two prison guards, Luna and Kinker, under 42 U.S.C. § 1983, alleging the use of excessive force on April 15, 1987. The district court dismissed Williams' suit as frivolous. In response to Williams' initial complaint, the district court sent Williams a series of questions seeking a more definite statement of his claim. In two separate responses, Williams detailed his injuries from the incident, stated that disciplinary charges were filed against him for refusing or failing to obey an order, and added that he was not allowed to attend his disciplinary hearing. In two amended complaints, Williams added as defendants then director Lynaugh and Warden McLeod, apparently on a respondeat superior basis.

The district court held a *Spears* hearing. At the hearing, Williams essentially repeated his allegations about the excessive force incident. According to Williams, he was leaving his cell during a shakedown when Prison Guard Luna for no reason grabbed him and pulled him backwards off his feet so that he hit the floor. After he got up, Luna grabbed him in a headlock, squeezed him against a railing, then body-slammed him into the floor. According to Williams, Prison Guard Kinker then stood on the bottom of Williams' feet and put his knees on the back of Williams' knees. Kinker then put Williams in a wristlock and handcuffed him.

Williams alleged injuries to both feet, his lower back, his head, and his right knee. In his response to the more definite statement order, he stated that his right knee still hurt and that he was having headaches, back pain, and muscle control problems in both legs. He alleged that his right knee has "never gotten better, and has caused a lot of nerve damages in [his] leg." At the *Spears* hearing, Williams testified that he had seen doctors at John Sealy Hospital on a continuing basis for nerve problems in the back of his legs, especially his right knee. Williams also testified that, although he told nurse Anderson about injuries to his knees, back, elbows and feet at a "prehearing physical" right after the incident, he had since viewed his medical records and they did not reflect these complaints.

In response to questioning about his disciplinary hearing, Williams testified, essentially in accord with his written pleadings, that he had a hearing two days after the incident on April 17, but that it was stopped because he was ordered to undergo a psychiatric evaluation. Williams stated that he was never informed that the hearing resumed on April 28 and was not allowed to attend.

In response to questions from the district court at the *Spears* hearing, Assistant Warden Driscoll read from a disciplinary report which indicated that Williams had refused to attend his April 28, 1987, disciplinary hearing. The judge ordered the disciplinary report submitted for the record. Williams testified that the report was wrong and reiterated that he had never been given an opportunity to attend the second hearing. The district court also had a Texas Department of Corrections (TDC) official examine Williams' medical records. Those records noted the prehearing physical on April 15, 1987, after the excessive force incident, and reflected no "abnormalities." The records also indicated that Williams was later sent to a hospital for headaches and, later still, that he was seen several times by a neurologist for problems with his lower extremities. The records reflected that Williams suffers bilateral paroneal nerve palsy which might have been caused by compression, a vitamin B12 deficiency, or an endocrine problem. The district court ordered the medical records incorporated into the record as well. Only one page of those records, reflecting the April 15 prehearing physical, is in the record on appeal.

After the *Spears* hearing, the district court dismissed Williams' suit under 28 U.S.C. § 1915(d) as frivolous. The court referred to the account of the excessive force incident in a disciplinary report, which stated that Williams was resisting an officer when the force was used to subdue him. The court relied on medical records to find that Williams had no "severe injury" because he was examined five times during the next several days and complained only of side effects from his medication. The district court also apparently credited the disciplinary record indicating that Williams had refused to attend his disciplinary hearing, rather than crediting Williams' testimony that he was not allowed to attend.

Williams filed a timely notice of appeal.

## II.

Defendants Lynaugh and McLeod were sued solely because of their positions of authority at TDC and the Ellis II Unit. As the doctrine of respondeat superior does not apply to § 1983 actions, *see Bush v. Viterna*, 795 F.2d 1203, 1206 (5th Cir.1986), and as no other basis of liability for these defendants is mentioned, this suit was properly dismissed against them because the claims against them have no arguable basis in law. *See Pugh v. Parish of St. Tammany*, 875 F.2d 436, 438 (5th Cir. 1989).

This court established the standard for excessive force claims in a prison context in *Huguet v. Barnett*, 900 F.2d 838 (5th Cir.1990). In order for a plaintiff to prevail on an eighth amendment excessive force claim, he must prove (1) a significant injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; (3) the excessiveness of which was objectively unreasonable;

124

and (4) the action constituted an unnecessary and wanton infliction of pain. *Id.* at 841. "If any one of these elements fails, so too does the plaintiff's claim." *Id.*

According to Williams' pleadings and testimony, there was no need for any use of force in this situation, as he was obeying an order to move from his cell to the day room. Accordingly, Williams' testimony establishes that the force used was "clearly excessive to the need" and "objectively unreasonable." A reasonable assumption from his testimony is that the action "constituted an unnecessary and wanton infliction of pain."

The "significant injury" factor in *Huguet* is taken directly from *Johnson v. Morel*, 876 F.2d 477 (5th Cir.1989) (en banc). The actionable injury in *Johnson* was that "Morel applied the handcuffs so tightly that they not only broke the skin, but left apparently permanent scars on Johnson's wrists and disabled him from his employment for about two weeks." 876 F.2d at 478. Given the residual palsy problem with Williams' legs, he has shown a greater injury than Johnson. Accordingly, he has alleged a significant injury for purposes of *Huguet.*

■ The district court relied on Williams' medical records to refute his allegations that he complained of problems to his legs after the incident. Although Fifth Circuit jurisprudence gives broad discretion to district courts in conducting *Spears* hearings, the use of prison records to counter a plaintiff's testimony is improper. "[T]he most important consideration in a § 1915(d) credibility assessment is the inherent plausibility of a prisoner's allegations based on objective factors." *Cay v. Estelle*, 789 F.2d 318, 326 (5th Cir.1986). *See Gilbert v. Collins*, 905 F.2d 61, 63 (5th Cir.1990). Nothing in Williams' testimony refutes his allegation that his leg complaints resulted from Kinker's actions in stepping on his feet and knees. Because Williams adequately alleged a claim for use of excessive force under *Huguet,* the district court improperly dismissed this claim at this stage of the proceedings.

■ Williams also alleged that he was not allowed to attend his disciplinary hearing on April 28. The district court, relying on a disciplinary record which refuted Williams' testimony, chose to disbelieve him. Such a credibility decision is beyond the scope of a *Spears* hearing. The district court also noted what it termed an inconsistency in Williams' allegations—that the disciplinary hearing was interrupted for his psychiatric exam and he was not allowed to attend the hearing at all. But this is explained by both Williams' pleadings and his testimony; they establish two hearings—the first, on April 17, was interrupted, and Williams was not allowed to attend the second one held on April 28. We conclude that the district court made an improper credibility determination in resolving this issue at the *Spears* hearing. *See generally Moody v. Miller*, 864 F.2d 1178, 1180 (5th Cir.1989) (citing authority for the proposition that a prisoner has a constitutional right to attend his own disciplinary hearing).

In summary, the dismissal of Williams' action against defendant Lynaugh and McLeod is affirmed. The dismissal of Williams' action against Luna and Kinker is vacated and the action is remanded to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART, VACATED AND REMANDED IN PART.