Dennis Wayne WILSON,
Plaintiff–Appellant,

v.

Enrique M. BARRIENTOS, et al.,
Defendants–Appellees.

Terry W. HUNTSBERRY,
Plaintiff–Appellant,

v.

BYRD, et al., Defendants–Appellees.

Nos. 89–2854, 89–6005.

United States Court of Appeals,
Fifth Circuit.

March 20, 1991.

Order on Petition for Rehearing
April 10, 1991.

Dennis Wayne Wilson, Lovelady, Tex., pro se.

Terry W. Huntsberry, Gatesville, Tex., pro se.

Before BROWN, POLITZ, and JOHNSON, Circuit Judges.

POLITZ, Circuit Judge:

Dennis Wayne Wilson and Terry W. Huntsberry appeal the dismissals with prejudice entered in their separate *in forma pauperis* civil rights actions filed against

correctional officers at the institutions at which they are incarcerated. Concluding that the magistrate judge abused her discretion in the conduct of the *Spears* [1] hearings, we vacate the judgments entered and remand each case.

### Background

These consolidated cases were initiated by *pro se* petitions filed by prisoners alleging unlawful use of force by correctional officers. Dennis Wayne Wilson alleged that the morning after he refused to serve a glass of water to a prison guard that guard and two others handcuffed one of his arms and twisted his other arm through a cell food slot, resulting in great pain. Wilson claimed a violation of his eighth amendment protection against cruel and unusual punishment.

Terry W. Huntsberry claims to have been beaten by guards resulting in head, face, and jaw injuries and partial sight loss. Huntsberry characterized this treatment as a violation of his constitutional rights.

Both litigants filed civil rights complaints and sought *in forma pauperis* status. Pursuant to their IFP requests each was given a *Spears* hearing.[2] At Wilson's hearing the magistrate judge [3] heard the testimony of Wilson, a corrections department internal affairs officer, and a treating physician. The doctor ostensibly had Wilson's

medical records and commented about entries therein. There is no evidence that the records were authenticated, that Wilson was given a chance to examine them, or that the magistrate judge even looked at them. Similarly, the internal affairs officer testified as to the contents of an administrative investigation undertaken regarding Wilson's alleged injuries. Neither the magistrate judge nor Wilson examined the report.

Wilson attempted to introduce additional affidavits but the magistrate judge instructed him that these would not be appropriate unless he was seeking summary judgment. She further explained that her task was to "look[ ] at the medicals and the Internal Affairs report, and write a report to the district judge on whether or not I think there needs to be a trial, whether or not the case can be disposed of at this time or whatever my recommendation is...." At the close of the hearing, Wilson opted to allow the magistrate judge to decide the merits of the case rather than the district judge, with direct appeal coming to this court rather than the district court. Fed.R. Civ.P. 73(c). The magistrate judge later revoked Wilson's IFP status and dismissed the suit.

Huntsberry's *Spears* hearing also involved testimony from an internal affairs officer and prison physician. In addition,

---

1. *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985).

2. The purpose of a *Spears* hearing is to determine whether IFP status should be granted or the case should be dismissed under 28 U.S.C. § 1915(d) which provides: "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious."

3. Both *Spears* hearings at bar were conducted by the same magistrate judge, but variance from the original *Spears* format has occurred in other cases. *E.g., Varnado v. Collins,* 920 F.2d 320 (5th Cir.1991) (prison medical records examined); *Oliver v. Collins,* 914 F.2d 56, 58 (5th Cir.1990) (doctor testified and "Oliver was not afforded any opportunity to comment on [his injuries] or on the medical records [which had been admitted into evidence]."); *Wesson v. Oglesby,* 910 F.2d 278, 282 (5th Cir.1990) (defendants submitted correctional facility records; "magistrate abused his discretion by adopting the defendants' version of material facts about which the parties clearly differed"); *Williams v.*

*Luna,* 909 F.2d 121, 123 (5th Cir.1990) ("In response to questions from the district court at the *Spears* hearing, Assistant Warden Driscoll read from a disciplinary report.... The judge ordered the disciplinary report submitted for the record."); *Gilbert v. Collins,* 905 F.2d 61 (5th Cir.1990) (prison internal affairs report and medical records considered); *Bailey v. Johnson,* 846 F.2d 1019 (5th Cir.1988) (medical testimony and records considered); *Felix v. Rolan,* 833 F.2d 517 (5th Cir.1987) (unspecified testimony and disciplinary reports relied upon).

Other *Spears* hearings have gone beyond the original holding, but the opinions have only hinted at such. *E.g., Martinez v. Griffin,* 840 F.2d 314 (5th Cir.1988). Scores more prisoner civil rights cases are either not appealed or not published by this court under Fifth Cir.Loc.R. 47.5.

We also note that some of our cases have recognized the variance we discuss today and have reversed or vacated on those grounds. *E.g., Williams v. Luna,* 909 F.2d at 124 ("the use of prison records ... is improper"); *Cay v. Estelle,* 789 F.2d 318 (5th Cir.1986). Our tolerance for variance in the conduct of these hearings has been somewhat less than consistent.

an attorney from the state attorney general's office questioned Huntsberry and offered unauthenticated disciplinary reports. The magistrate judge recommended revocation of Huntsberry's IFP status and the dismissal of his suit. The district court adopted these recommendations.

Wilson and Huntsberry timely appealed. We consolidated the appeals.

## Analysis

In *Spears* we authorized an evidentiary hearing "in the nature of a [Fed.R.Civ.P. 12(e)] motion for more definite statement." 766 F.2d at 181–82. These hearings were to supplement the questionnaires sent to prisoners to elaborate on often less than artfully-drafted pleadings. The questions and answers had been considered the equivalent of a response to a 12(e) motion. *Id.* at 181 (citing *Watson v. Ault*, 525 F.2d 886, 892 (5th Cir.1976)). In the main, the *Spears* hearings have served their purposes well.

Those purposes are twofold. One is to implement the congressional intent of "meaningful access to the federal courts" for indigent litigants codified at 28 U.S.C. § 1915. *Neitzke v. Williams*, 490 U.S. 319, 324, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338, 346 (1989). Section 1915 opens the door to those persons, including prisoners, who are unable to pay the filing fees required of civil litigants, but cuts off at the pass those who would use the system cavalierly, in bad faith, or absent poverty. Dismissal is "often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Id.* (citation omitted).

A second rationale for the hearing, recognized by this court on numerous occasions, is to "winnow out the wheat from the unusual amount of chaff necessarily presented in a system which fosters *pro se* litigation." *Watson*, 525 F.2d at 890. As we explained in *Green v. McKaskle:*

> Unlike most litigants, prisoners have everything to gain and nothing to lose by filing frivolous suits. Filing a suit *in forma pauperis* costs a prisoner little or nothing; time is usually of little importance to a prisoner and prisoners are not often deterred by the threat of possible sanctions for malicious or frivolous actions or perjury. Moreover, a prisoner, while he may be unsuccessful, can at least look forward to "a short sabbatical

in the nearest federal courthouse." *Cruz v. Beto*, 405 U.S. 319, 327, 92 S.Ct. 1079, 1084, 31 L.Ed.2d 263, 271 (1972) (Rehnquist, J., dissenting).

788 F.2d 1116, 1119 (5th Cir.1986); *see also Neitzke*, 490 U.S. at 319, 109 S.Ct. at 1832, 104 L.Ed.2d at 347 (citing Turner, *When Prisoners Sue: A Study of Prisoner Section 1983 Suits in the Federal Courts*, 92 Harv.L.Rev. 610, 611 (1979)). In the past three years prisoner *pro se* cases have consistently comprised approximately one-quarter of the docket of this court and a high percentage of that of the district courts of this circuit. *See Judicial Workload Statistics of the United States Court of Appeals for the Fifth Circuit* 14–15 (1990) (23% to 27.9%); *see also Gabel v. Lynaugh*, 835 F.2d 124, 125 n. 1 (5th Cir. 1988).

Both goals of the *Spears* hearing are served by allowing a district or magistrate judge to question the prisoner regarding the nature of his or her complaint, in a controlled hearing. Worthy litigants receive much needed assistance in clarifying the nature of the relief they seek, and frivolous or malicious cases are disposed of in an expeditious and cost-effective, yet fair and equitable manner. Early screening of such cases provides the meritorious claim a speedier access to our "limited judicial resources [which may] then be utilized more timely and more efficaciously to resolve those cases in which relief should be affirmed." *Spears*, 766 F.2d at 182.

We recognized in *Cay v. Estelle*, 789 F.2d 318 (5th Cir.1986), that the *Spears* hearing can also serve as a vehicle by which limited credibility determinations can be made. Such findings are only for the purpose of "determining whether a suit is frivolous, not deciding the case on the merits. Thus, the most important consideration in a § 1915(d) credibility assessment is the inherent plausibility of a prisoner's allegations based on objective factors, rather than the demeanor of witnesses or a witness's prior criminal record." *Id.* at 326–27.

We have recognized in our district courts an "especially broad discretion in making the determination of whether an IFP proceeding is frivolous." *Id.* at 325 (and authorities cited therein). Frivolousness in this context is not coterminous with failure to state a claim, but it is to be equated with the raising of a wholly insubstantial federal claim. *E.g., Hilgeman v.*

*National Ins. Co. of America,* 547 F.2d 298, 300 (5th Cir.1977) (citing *Mays v. Kirk,* 414 F.2d 131, 135 (5th Cir.1969)). Within the context of the *Spears* hearing the trial judge has the discretion to decide the best way to elicit the complainant's articulation of his grievance and the basis for making any credibility assessment needed.[4]

■■■ Within the *Spears* framework the court may dispense with some of the typical formalities of judicial proceedings in its determination of the suitability of both the claimant and the claim for IFP status. Some, but not all. In *Cay* we reversed and remanded because in reviewing the magistrate judge's credibility assessments the district judge did not have access to either a transcript or sound recording of the *Spears* hearing. In *Williams v. Luna,* 909 F.2d 121 (5th Cir.1990), we vacated and remanded because of the improper use of prison records. In the cases at bar the magistrate judge erred in her effort to accomplish expedient fact-finding by reviewing unauthenticated records and accepting unsworn testimony.

■■■ *Spears, Cay, Green,* and their progeny establish the framework for determining the applicability of the § 1915(d) frivolous standard. The trial judge inquiring into the propriety of IFP status must ascertain what the plaintiff is claiming and may make limited assessments of the plaintiff's credibility. In doing so, the judge must take care that the evidence considered is authentic and reliable. Witnesses should be sworn; appropriate cross-examination should be allowed; and documents should be properly identified and authenticated. In short, a *Spears* hearing may be abbreviated, but the evidence adduced must meet adequate indicia of reliability.

In the cases at bar the witnesses were not sworn, no cross-examination was permitted, and documents were used by witnesses without adequate identification and authentication. The evidence adduced did not meet adequate indicia of reliability and the judgments resulting therefrom must be vacated.[5]

## VACATED AND REMANDED.

## ON PETITION FOR REHEARING

April 10, 1991.

POLITZ, Circuit Judge:

The Attorney General of the State of Texas has moved for leave to file an amicus curiae petition for rehearing and a like motion to supplement the record on appeal. Because of the special considerations which exist in *pro se* prisoner civil rights complaints and *Spears*[1] hearing appeals, we grant these motions. Having done so we have reconsidered the appeals in light of the supplemented record.

On the record as now supplemented, it is apparent that all witnesses were sworn at the beginning of the day's series of *Spears* hearings conducted by the magistrate judge. Further, pursuant to an arrangement of long standing between the district court and the Attorney General's office, the court was furnished with such medical and other prison records as were requested, for use by the complainant[s] and review by the court in its 28 U.S.C. § 1915(d) determination about the viability of the complaint. Accordingly, the magistrate judge did not entertain the testimony of unsworn witnesses, nor did she consider records which were not adequately identified or authenticated. Our statement to the contrary in the opinion was incorrect and it is recalled.

We confirm and reinstate our prior opinion 926 F.2d 480, as it relates to the appropriate procedures to be followed in *Spears* hearings. We also reinstate our decision

---

**4.** This is not to suggest that a *Spears* hearing should be conducted for every *pro se* complaint. *Cf. Green,* 788 F.2d at 1120 ("Of course, our discussion of *Spears* should not be interpreted to mean that all or even most prisoner claims require or deserve a *Spears* hearing. A district court should be able to dismiss as frivolous a significant number of prisoner suits on the complaint alone or the complaint together with the *Watson* questionnaire.").

**5.** Wilson's claim was decided by the magistrate judge with the consent of the parties. She applied the *Hines v. Boothe,* 841 F.2d 623 (5th

Cir.1988), standard in determining whether the alleged injuries rose to the level of an eighth amendment violation. An intervening decision, *Huguet v. Barnett,* 900 F.2d 838 (5th Cir.1990), specified use of a four-part test, based on the excessive force on arrest standard of *Johnson v. Morel,* 876 F.2d 477 (5th Cir.1989) (en banc), plus an examination of whether wanton infliction of pain existed. On remand the *Huguet* standard must be applied.

**1.** *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985).

vacating and remanding Wilson's complaint for consideration in light of our intervening decision in *Huguet v. Barnett*, 900 F.2d 838 (5th Cir.1990), in which we adopted for application in eighth amendment excessive force cases the standard the en banc court announced in *Johnson v. Morel*, 876 F.2d 477 (5th Cir.1989), for use in fourth amendment arrest cases. The magistrate judge rejected Wilson's complaint applying pre-*Huguet* precedents. Finally, the magistrate judge recommended dismissal of Huntsberry's complaint as frivolous. The district court adopted that recommendation. We affirm that decision.

The dismissal of Huntsberry's complaint is AFFIRMED.

The dismissal of Wilson's complaint is VACATED and the matter is REMANDED for consideration in light of *Huguet v. Barnett*.

In all respects not inconsistent herewith, the original opinion is reinstated.