Thaddeus THOMAS, Petitioner,

v.

Dr. Glen FERGUSON,
et al., Defendants.

No. CIV.A. 02–3016.

United States District Court,
D. New Jersey.

Dec. 2, 2004.

Thaddeus Thomas, Kearny, NJ, pro se.

Tamara L. Rudow, Department of Law and Public Safety Division of Law Richard J. Hughes Justice Complex, Trenton, NJ, for Defendants.

## OPINION & ORDER

HOCHBERG, District Judge.

This matter comes before the Court upon Defendants' motion for summary judgment. Pursuant to 42 U.S.C. § 1983, Plaintiff-detainee alleges Eighth Amendment violations by Senior Corrections Officers (SCO) Anthony DiGiavanni and Robert Caputo. The Court reviews the motion on the papers in accordance with Fed. R.Civ.P. 78.

## BACKGROUND

Since October 3, 2000, Plaintiff Thaddeus Thomas has been detained at the Special Treatment Unit (STU) in Kearny, New Jersey, a state facility designated for the custody and care of sexually violent predators. After being placed in STU, he assaulted two inmates and was subsequently assigned to the STU's Restricted Activities Program (RAP) on June 25, 2002.

On July 1, 2002, Defendants Anthony DiGiavanni and Robert Caputo, senior corrections officers at STU, were escorting Plaintiff from RAP housing to a scheduled meeting when an altercation occurred between them. Defendant DiGiavanni called a security emergency via radio, and after some moments, Sergeant Russo and SCOs Jones, Singletary, and Booker arrived at the scene. The officers then handcuffed Plaintiff.

After the altercation, Plaintiff was escorted by SCOs Jones, Singletary, and Booker to Carol Bynon, the facility's nurse. The nurse noted that Plaintiff's face appeared to be bleeding and found that Plaintiff's injuries were a broken pimple, a cut and swollen area on his right cheek bone, and a small laceration on the bridge of his nose. The nurse treated the cuts with antibiotic and provided an ice pack for his cheek. No other bruises or lacerations were noted. The Plaintiff was escorted back to his cell after the bleeding stopped.

Later, Dr. Patel diagnosed Plaintiff in his cell, while several officers were present. When Dr. Patel asked Plaintiff what happened to him, Plaintiff responded that he had done too many sit-ups. Dr. Patel made no separate diagnosis from Nurse Bynon.

Defendants DiGiavanni and Caputo were also diagnosed by Nurse Bynon. SCO DiGiavanni was diagnosed with a right knee strain and contusion, mid to lower back strain, and chest muscle contusion. He remained under doctor's care for several weeks. SCO Caputo was diagnosed with a left knee injury, an injury to his right hand and finger, and a lower spine injury. He was medically prohibited from working and remained under doctor's care for several weeks.

On July 2, 2002 two criminal complaints were filed against Plaintiff for assault of the two corrections officers after an investigation by Bert Szulc of the Special Investigations Division of the Department of Corrections. Several days later a therapist in the facility noted that Plaintiff has a "willingness to injure and exploit others for his own ends and pleasure ... the

assaults do not appear to be the product of situational stresses and there is no evidence of a mental illness."[1]

Plaintiff commenced this *pro se* action on October 17, 2002. He was appointed *pro bono* counsel on September 2, 2003, prior to submitting his certification and being deposed. Plaintiff initially alleged multiple causes of action against multiple defendants, but only the excessive force claims against SCOs DiGiavanni and Caputo remain.

## STANDARD

### I. Summary Judgment

Pursuant to Fed.R.Civ.P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, "summary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Indiana Hosp.,* 843 F.2d 139, 143 (3d Cir.1988). All facts and inferences must be construed in the light most favorable to the nonmoving party. *Peters v. Delaware River Port Auth.,* 16 F.3d 1346, 1349 (3d Cir.1994). The judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. "Consequently, the court must ask whether, on the summary judgment record, reasonable jurors could find facts that demonstrated, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict." *In re Paoli R.R. Yard PCB Litigation,* 916 F.2d 829, 860 (3d Cir.1990).

The party seeking summary judgment always bears the initial burden of production. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. This burden requires the moving party to establish either that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or to demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden. *See id.* at 322–23, 106 S.Ct. 2548. Once the party seeking summary judgment has carried this initial burden, the burden shifts to the nonmoving party.

To avoid summary judgment, the nonmoving party must then demonstrate facts supporting each element for which it bears the burden, and it must establish the existence of a "genuine issue of material fact" justifying trial. *Miller,* 843 F.2d at 143; *see also Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587, 106 S.Ct. 1348 quoting *First National Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). Further, summary judgment may be granted if the nonmoving party's "evidence is merely colorable or is not significantly probative."

---

**1.** Plaintiff disputes the relevance of the complaints and the therapist's note in his counter- statement of material facts.

*Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505.

## II. Eighth Amendment Excessive Force

■ In an excessive force claim under the Eighth Amendment, summary judgment in favor of the defendant is appropriate where the evidence, viewed in the light most favorable to the plaintiff, does not support "a reliable inference of wantonness in the infliction of pain." *Whitley v. Albers,* 475 U.S. 312, 322, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). The central question is "whether force was applied ... maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Such force is "repugnant to the conscience of mankind." *Whitley,* 475 U.S. at 327, 106 S.Ct. 1078 quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

■ Factors that a court may look to in order to determine if force was excessive include: (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury" inflicted; (4) the threat "reasonably perceived by the responsible officials"; and (5) "any efforts made to temper the severity of a forceful response." *Whitley,* 475 U.S. at 321, 106 S.Ct. 1078; *Hudson,* 503 U.S. at 7, 112 S.Ct. 995. In the Third Circuit, *de minimis* injuries to a Plaintiff, alone, are not a sufficient basis to grant summary judgment in favor of defendants.[2] *Brooks v. Kyler,* 204 F.3d 102, 108–09 (3d Cir.2000); *Smith v. Mensinger,* 293 F.3d 641, 648–49 (3d Cir.2002). " 'When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency

always are violated ... whether or not significant injury is evident. Otherwise the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.' " *Brooks,* 204 F.3d at 108 quoting *Hudson,* 503 U.S. at 9, 112 S.Ct. 995.

## DISCUSSION

This Court must determine if, when viewing the facts in the light most favorable to the Plaintiff, a reasonable jury could conclude by a preponderance of the evidence that Defendants had malicious and sadistic intent to cause harm. The facts are undisputed that at least some force was used upon Plaintiff. It is also undisputed that (1) the Defendants sustained injuries as a result of some force exerted upon them, (2) during the altercation Plaintiff's hands were free, (3) Defendants called a security emergency, and (4) Plaintiff sustained injuries as diagnosed by Nurse Bynon. In dispute is the extent of Plaintiff's injuries caused by Defendants, the extent of force used by Defendants, Defendants' reasonably perceived need to apply force, and the extent of Defendants' injuries caused by Plaintiff.

### A. Plaintiff's Injuries

Although not dispositive, Plaintiff's injuries are relevant to determining if excessive force was used against Plaintiff. *Brooks,* 204 F.3d at 108. A plaintiff's *de minimis* injuries do not alone refute a plaintiff's excessive force claim; however, "the degree of [plaintiff's] resulting injury [can be] highly relevant to the determination of the unreasonableness of the force used." *Id.* Nurse Bynon found, uncontradicted by Dr. Patel's later diagnosis, that

---

**2.** In this respect, our Circuit has ruled differently than some of our sister circuits. *See, e.g., Gomez v. Chandler,* 163 F.3d 921, 924 (5th Cir.1999) ("[T]o support an Eighth

Amendment excessive force claim a prisoner must have suffered from the excessive force a more than de minimis physical injury"). This Court applies the Third Circuit standard.

Plaintiff had suffered a broken "pimple on outer aspect of right eye," a cut and swelling on his right cheek bone ("broken edemnatous area"), a "small laceration" on the bridge of his nose, and had some bleeding (although unclear from which injuries). Plaintiff testified in deposition that he sustained two additional injuries than those reported by the medical staff; namely, a cut above his right eye (seemingly in lieu of a broken pimple) and swelling on "both sides of [his] eyes." [3] Plaintiff's injuries did not prohibit him from returning to his cell after receiving minor treatment, and Plaintiff received no further medical attention.

Although Plaintiff's allegations about the two additional injuries are undocumented by medical staff, this Court must nonetheless credit Plaintiff's statements of injury for purposes of a summary judgment motion. *See Brooks,* 204 F.3d at 108 n. 7 (stating that " 'an inmate who is proceeding pro se, is in a decidedly difficult position from which to generate 'record evidence' on his behalf' ") quoting *Norman v. Taylor,* 25 F.3d 1259, 1265 (4th Cir.1994) (dissenting). Plaintiff's two claimed additional injuries are the subject of contradictory evidence of injury adduced by Plaintiff. In his certification of November 23, 2003 Plaintiff avers that SCOs DiGiavanni and Caputo were responsible for the cut above his eye (and does not mention swelling on both eyes). In Plaintiff's deposition of June 4, 2004, he states that another officer (SCO Singletary who later arrived on the scene) was responsible for the cut above his eye and alleges swelling of both eyes. A plaintiff's "affidavits . . . are about the best that can be expected from him" when medical records contradict plaintiff's claim of injury. *Brooks,* 204 F.3d at 108 n. 7. In viewing the facts in the light most favorable to Plaintiff in order to determine if excessive force was used, it is relevant that Plaintiff's injuries, even those undocumented, are relatively minor.

*B. Plaintiff's Allegations of the Extent of Force Used and the Need for Force*

■ Despite Plaintiff's minor degree of injury, Defendants' motion for summary judgment is nonetheless without merit if Defendants acted with sadistic and malicious intent to cause pain. *Brooks,* 204 F.3d at 109 (holding that "defendants' acts are not shielded from constitutional scrutiny simply because [a plaintiff] did not proffer objective evidence of more than *de minimis* injury"). Plaintiff's injury is only a factor in determining the force used against a plaintiff, *Smith,* 293 F.3d at 649; *Hudson,* 503 U.S. at 7, 112 S.Ct. 995, but can be can be highly relevant. *Brooks,* 204 F.3d at 108. The critical element is the manner of the infliction of the injury, not the injury itself. *Rhodes v. Robinson,* 612 F.2d 766, 771 (3d Cir.1979).

The allegations of how much force Defendants used, and the need for it, are in contest. Defendants assert that while escorting the Plaintiff from RAP, Plaintiff suddenly became violent. Plaintiff first pushed SCO DiGiavanni, then began punching and kicking both Defendants. Defendants were unable to fully restrain Plaintiff on their own. Plaintiff continued to punch and kick as SCO Caputo tried to hold him face down on the floor. It was not until a sergeant and three other corrections officers arrived that Plaintiff was subdued and handcuffed. Plaintiff did not obey the sergeant's orders to stop resisting.

Plaintiff's evidence of Defendants' use of force contradicts that of Defendants.

---

**3.** Plaintiff's counsel contends that Plaintiff also sustained back injuries, citing evidence of Plaintiff's pain in a videotaping of Dr. Patel's visit to his cell; however, Plaintiff himself makes no such claim in any of his evidence—certification or deposition.

Plaintiff's certification avers that the altercation began when SCOs DiGiavanni and Caputo "pushed [Plaintiff] into a pole"; however, Plaintiff's deposition indicates that the incident began by SCO Caputo pushing Plaintiff into SCO DiGiavanni. Plaintiff's allegations are made more contradictory by Plaintiff's later deposition testimony that he and SCO Caputo were "five or seven yards" away from SCO DiGiavanni just before the altercation began. Plaintiff's assertions about the force used against him are as follows. His certification states that "one or more of the corrections officer pushed and kicked me in my back." Plaintiff's deposition testimony is that SCO DiGiavanni punched him twice, SCO Caputo punched him once, and DiGiavanni and Caputo threw him to the ground.

Significantly, Plaintiff attributes the most egregious claims of force used against him to corrections officers who are not named Defendants. Plaintiff testified that after SCOs DiGiavanni and Caputo threw Plaintiff to the ground, other officers entered the room and assaulted Plaintiff while he was on the floor. DiGiavanni started yelling at Plaintiff, but Plaintiff asserts nothing more about Defendants' conduct. Plaintiff states, "they [Defendants] threw me to the ground. Other officers came . . . and jumped on me on the loading docks. DiGiavanni started yelling . . . I was already on the ground on my stomach, being stomped, punched and everything by the officers." Plaintiff proceeds to discuss what SCOs Singletary and Jones did, but never again mentions Defendants. Plaintiff's two summary judgment briefs also do not suggest that SCOs DiGiavanni or Caputo further harmed Defendant after he was allegedly on the floor.[4]

Plaintiff's facts must meet his burden, albeit low, of resisting summary judgment since the burden shifted to Plaintiff after Defendants first met their burden in their motion. *See Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548; *Miller*, 843 F.2d at 143. An issue of fact between Plaintiff's two pieces of evidence does not meet his burden, as a plaintiff cannot "create his own issue of fact" in order to defeat a Defendant's motion for summary judgment. *Foster v. Arcata Assoc., Inc.*, 772 F.2d 1453, 1462 (9th Cir.1985) (holding that no issue of fact exists where party's affidavit contradicts his prior deposition testimony); *see In re Carlisle Homes, Inc.*, 103 B.R. 524 (Bankr.D.N.J.1988); *Panziner v. Wolf*, 1980 WL 1395 (S.D.N.Y.1980).

## C. Defendants' Injuries

Finally, according to documentation, Defendants also sustained injuries during the altercation. Nurse Bynon diagnosed SCO DiGiavanni with a right knee strain and contusion, mid to lower back strain, and chest muscle contusion. He remained under a doctor's care for several weeks. SCO Caputo was diagnosed with a left knee injury, an injury to his right hand, and lower spine. SCO Caputo was medi-

---

4. Plaintiff's allegations here are unlike those in *Smith*. In *Smith*, the Third Circuit reversed summary judgment in favor of Defendant-officers because the plaintiff had implicated all Defendants by stating several times that "all of them" were involved in striking him, even though the plaintiff was not sure exactly what each had done. *Smith*, 293 F.3d at 650. In the present case, Plaintiff does not implicate SCOs DiGiavanni and Caputo in his affidavit or in his deposition in any violent conduct once the other corrections officer arrived on the scene and allegedly began striking Plaintiff. Also unlike in *Smith*, the other corrections officers to which Plaintiff refers are not named as defendants, so no possibility of making legal findings against them exists here. SCO Singletary was dismissed by stipulation on June 7, 2004, and SCO Jones has never been a defendant. SCO DiGiavanni and Caputo's conduct after the other officers arrived could have perhaps been relevant to a "failure to intervene" claim, but no such claim was pursued.

cally prohibited from working and also remained under a doctor's care for several weeks. Plaintiff maintains however in deposition that "I never put my hand on no officer, not even in prison. I wouldn't disrespect an officer like that."

### D. Analysis

█ Viewing the evidence put forth in the light most favorable the Plaintiff, as this Court must, Plaintiff has suffered minor injuries from a use of force of three punches and two shoves, allegedly by the two Defendants herein, during an altercation. The question presented is whether Plaintiff has adduced sufficient evidence to "permit a reasonable jury to find for the nonmoving party." *Miller*, 843 F.2d 139.

Even if proven to be true and for no necessary purpose, Defendants' alleged conduct, although uncivil and immoral, does not meet the Constitutional standard for a claim of a malicious and sadistic use of force "repugnant to the conscience of mankind" which is the long established basis of our Eighth Amendment jurisprudence.[5] *Whitley*, 475 U.S. at 327, 106 S.Ct. 1078 quoting *Estelle*, 429 U.S. at 106, 97 S.Ct. 285. The Supreme Court has cautioned that a line must be drawn between actionable excessive force claims and other "malevolent" conduct that does not implicate the United States Constitution. *Hudson*, 503 U.S. at 7, 112 S.Ct. 995 citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973) (stating that "not ... every malevolent touch by a prison guard gives rise to a federal cause of action"). Rather, the test of "cruel and unusual" should be a strict one. *Rhodes*, 612 F.2d at 771 (3d Cir.1979). Thus, this Court finds that

Plaintiff's claims do not satisfy the test for a Constitutional violation.

This Court notes that the Third Circuit has recently reversed two grants of summary judgment against plaintiffs by district courts where the district court relied heavily on evidence that showed plaintiffs suffering only minor injuries. The Third Circuit found the degree of the alleged unwarranted force used to be controlling, rather than the injury. In *Brooks*, the plaintiff suffered only a few abrasions on his neck and hands, but summary judgment in favor of defendants was reversed because the plaintiff was repeatedly punched in the head, stomped about the back and neck, slammed into a cell wall, choked, and rendered nearly unconscious. These actions were done by three corrections officers while the plaintiff was defenseless in handcuffs. *Brooks*, 204 F.3d at 104. Similarly in *Smith*, the documented evidence only showed abrasions to the forearm and eyebrow, and plaintiff alleged swelling in his ribs and wrists and some bleeding from his forehead; however, summary judgment in favor of defendants was again reversed because plaintiff was assaulted by six corrections officers while handcuffed, and was repeatedly punched, kicked, thrown into walls and cabinets, choked, and his handcuffs were tightened to the point of discoloration in his hands. *Smith*, 293 F.3d at 644–45.

The present case differs from *Brooks* and *Smith*. The plaintiffs in *Brooks* and *Smith* were subjected to far more reprehensible force, by a greater number of defendants, while they were rendered defenseless in restraints unlike Plaintiff in this case.

---

**5.** Like the issue of Defendants' use of force, the amount of injuries sustained by Defendants during the altercation is similarly in dispute. Although documentation shows that Defendants sustained injuries at least as serious as those of Plaintiff, thus casting doubt on

Plaintiff's assertion that he used no force against Defendants, again a fact finder need not resolve this issue because Plaintiff's claims against the instant Defendants do not meet the test of "cruel and unusual."

The Eight Amendment protects prisoners from sadistic and malicious actions of corrections officers repugnant to the conscience of mankind. It has given redress to plaintiffs who were unjustifiably shot, *Whitley,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251, plaintiffs who were seriously beaten by three corrections officers while one restrained the plaintiff and an observing supervisor warned against having "too much fun," *Hudson,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156, struck 20 to 25 times in the head with four officers restraining his limbs as two others stood by to assist, *Estate of Davis v. Delo,* 115 F.3d 1388 (8th Cir.1997), and body-slammed to the floor, handcuffed, put in a wrist lock, and placed face down so a corrections officer could apply weight to the bottom of plaintiff's feet and the back of his knees, consequently leaving plaintiff with headaches, back pain, and muscle control problems in both legs, *Williams v. Luna,* 909 F.2d 121, 123 (5th Cir.1990).

Even when the force used upon a plaintiff does not approach the outrageous levels of these examples, a plaintiff is still afforded Eighth Amendment protection where the force applied by the defendants was still sufficiently repugnant, as recently seen in *Brooks* and *Smith.* Eighth Amendment protections, however, have never been afforded in cases of minor injury *and* minor use of force, even in the face of allegedly immoral conduct. *See Brown v. Vaughn,* 1992 WL 82310 *2 (E.D.Pa. April 13, 1992) (granting summary judgment in favor of defendants where correc-tions officer initiated violence by punching plaintiff-inmate once, and pushing, spitting, verbally abusing, and using racial slurs against him); *Candelaria v. Coughlin,* 787 F.Supp. 368, 374 (S.D.N.Y.1992), *aff'd,* 979 F.2d 845 (2nd Cir.1992) (granting motion to dismiss plaintiff-inmate's complaint where corrections officer initiated violence by using a pocket knife to cut a string with religious significance from around plaintiff's neck and unprovokedly pushed his fist against plaintiff's neck inhibiting plaintiff's ability to move and breathe); *Lenegan v. Althouse,* 1988 WL 55243 *2 (E.D.Pa. May 26, 1988) (granting motion to dismiss plaintiff-inmate's complaint where corrections officer initiated conflict by smacking seated plaintiff in the back of his head as another corrections officer pulled inmate's hair).

Plaintiff's allegations of force fall into this latter category of cases. As discussed, the force applied and consequent injuries were relatively minor, and nothing about Plaintiff's allegations suggests particularly diabolic conduct such as, for example, routine application of minor force just below the threshold of causing actual injury. *Cf. Hudson,* 503 U.S. at 9, 112 S.Ct. 995 (warning against the Eighth Amendment permitting *de minimis* application of force and injury "no matter how diabolic or inhuman").

The evidence Plaintiff has put forth to meet the standard of "cruel and unusual punishment" with malicious and sadistic intent under the Eight Amendment is insufficient here.[6] Summary judgment is granted for Defendants.[7]

---

**6.** Even if true, Plaintiff's claims would at most give rise to a common law tort, which does not on its own establish a claim under § 1983, *Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), even if the victim is a prisoner with limited other options for recourse. *Estelle,* 429 U.S. at 106, 97 S.Ct. 285.

**7.** Although qualified immunity was raised as a defense in the present case, this Court need not analyze the issue. *Saucier v. Katz* requires that courts resolve the substantive constitutional issue before addressing qualified immunity. 533 U.S. 194, 199–201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This Court has done so and has found for Defendants on the merits, thus making Defendants' qualified

## CONCLUSION

Accordingly, **IT IS** on this 2nd day of December 2004,

**ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**; and it is further

**ORDERED** that this case is **CLOSED**.

immunity defense irrelevant. More importantly, where malicious and sadistic use of force is the issue of the constitutional cause of action, the qualified immunity test collapses into the same test as that of the constitutional issue, and is thus superfluous. Malicious and sadistic use of force is *always* in violation of clearly established law, so qualified immunity affords no protections to defendants in Eighth Amendment excessive force cases. *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (holding "a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force maliciously and sadistically to cause harm is clearly established to be a violation of the Constitution"); *Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir.2002) (holding where an Eighth Amendment excessive force claim is established "there is no room for qualified immunity [because] ... the subjective element required to establish it is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution"). The Third Circuit has applied similar logic in at least one Eighth Amendment deliberate indifference case. *See Beers–Capitol v. Whetzel*, 256 F.3d 120, 142 n. 15 (3d Cir.2001) (holding "the qualified immunity argument fails ... because to the extent that the plaintiffs have made a showing sufficient to overcome summary judgment on the merits, they have also made a showing sufficient to overcome any claim to qualified immunity").