Allen YOUNG, a.k.a. Brittney,
Plaintiff,

v.

Dr. Glenda ADAMS, et al., Defendants.

Civil No. W–09–CA–259.

United States District Court,
W.D. Texas,
Waco Division.

March 11, 2010.

Allen Young, Gatesville, TX, pro se.

### ORDER

JEFFREY C. MANSKE, United States Magistrate Judge.

#### I. *Background*

Plaintiff Allen Young, a.k.a Brittney Young, has filed suit against the Defendants pursuant to 42 U.S.C. § 1983. Plaintiff filed an application to proceed *in forma pauperis* and is before the Court *pro se.* Plaintiff is currently incarcerated in the Alfred D. Hughes Unit of the Texas Department of Criminal Justice, Institutional Division ("TDCJ") located in Gatesville, Texas. Complaint at 1.

Plaintiff names as Defendants: Dr. Glenda Adams, Mr. Harold Vick, Dr. William McCrea, and Ms. Valencia Pollard.

*Id.* at 3. Plaintiff alleges that the Defendants collectively denied hormone treatment to him pursuant to TDCJ policy G–51.11. *Id.* at 4. Plaintiff asserts that the denial of hormone therapy violates the Eighth Amendment's prohibition against cruel and unusual punishment, providing him with a cause of action under section 1983. Specifically, Plaintiff states his claim in pertinent part as follows:

> By not compling with policy G–51.11 Treatment for transgendered offenders in reguards to female hormone replacement therapy. The continuance of such medication while incarcerated in tdcj in preparation for gender reassignment surgery male to female. Dr. McCrea Dr. Harold Vick and Valencia Pollard have all blatenly refused to comply with said policy which resulted in causeing me a severe psychiatric condition called personality disorder by forceing me to be in a gender I am not which is cruel and inhumane treatment and grose medical neglect. Furthermore they further abuse me by Dr. Glenda Adams not compling with policy by refusal to provide continuance of H.R.T. causeing my breast to lose mass and causeing severe depression as I become disfigures.

Complaint at pgs. 4 and 6 (errors in original).

 ■ In an effort to develop a more definite statement of Plaintiffs claims, the Court conducted a *Spears* hearing on February 16,2010. *See Adams v. Hansen,* 906 F.2d 192, 193 n. 1 (5th Cir.1990); *Spears v. McCotter,* 766 F.2d 179, 181–82 (5th Cir. 1985). Plaintiff was given the opportunity to explain and expand the allegations in his Complaint. The sworn testimony of a plaintiff at the evidentiary hearing has the effect of an oral amendment, and therefore may be considered with the pleadings of the case. *Mikeska v. Collins,* 900 F.2d 833, 834 and 836 (5th Cir.1990); *see also Adams,* 906 F.2d at 194 ("The *Spears*

hearing is not a trial on the merit s; it is in the nature of an amended complaint or a more definite statement" (*citing Spears,* 766 F.2d at 181–82)). At the *Spears* hearing, Plaintiff consented to have his claims resolved before the United States Magistrate Judge.

Also presented at the hearing were properly identified and authenticated copies of Plaintiffs prison records (grievance, classification and medical) relevant to his claims, which TDCJ–ID provided for use at the hearing and review by the Court. Plaintiff consented to the admission of this evidence. *Wilson v. Barrientos,* 926 F.2d 480, 483 (5th Cir.1991). The Court heard testimony from Tracy Ortiz, Region VI Grievance Supervisor for TDCJ–ID, who provided sworn testimony based upon Plaintiffs disciplinary records. *Id.* The Court also heard testimony from P.A. Howard Bennett, a TDCJ–ID Unit Medical Director. Plaintiff was allowed to introduce evidence, enter objections to any evidence and question witnesses at the *Spears* hearing.

## II. *Discussion*

### A. *42 U.S.C. § 1983*

Title 42 U.S.C. § 1983 creates a cause of action against any person who, under color of law, causes another to be deprived of a federally protected constitutional right. Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress

Section 1983 was promulgated to prevent "... [a government official's] [m]isuse of power, possessed by virtue of state law and made possible only because the [official] is clothed with the authority of state law." *Johnston v. Lucas*, 786 F.2d 1254, 1257 (5th Cir.1986); *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (8th Amendment); *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986) (14th Amendment); *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 677, 88 L.Ed.2d 662 (1986) (14th Amendment). Section 1983, however, does not grant a cause of action for every wrong committed by a state official. *Whitley*, 475 U.S. at 319, 106 S.Ct. 1078.

Only two allegations are required in order to state a cause of action under 42 U.S.C. § 1983. "First, the Plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Manax v. McNamara*, 842 F.2d 808, 812 (5th Cir.1988).

**B.   *Statute of Limitations***

▮▮▮   Twenty-eight U.S.C. § 1915(e) authorizes a federal court to dismiss a claim filed *informa pauperis* if the court is satisfied that the action is frivolous or fails to state a claim. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The statute thus accords judges the authority to dismiss a claim based on "an indisputably merit less legal theory" or "whose factual contentions are clearly baseless." *Id.* at 327, 109 S.Ct. 1827. Although the defense of limitations is usually an affirmative defense raised by defendants, a district court may raise the statute of limitations defense *sua sponte* in an action proceeding under 28 U.S.C. § 1915(e). *See Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990); *Burrell v. Newsome*,

883 F.2d 416, 418 (5th Cir.1989). When it is clear from the face of a complaint filed *in forma pauperis* that the claim asserted is barred by the applicable statute of limitations, the claims are properly dismissed pursuant to § 1915(e). *Ali*, 892 F.2d at 440; *Burrell*, 883 F.2d at 418.

▮▮▮   In the instant case, the Plaintiff failed to file his complaint within two years after his cause of action accrued, and therefore his claim is barred by the statute of limitations. Tex. Civ. Prac. and Rem. Code § 16.003(a) (Vernon 2010). Section 16.003(a) states that a person must bring suit for personal injury not later than two years after the day the cause of action accrues. *Id.* Because there is no federal statute of limitations period for civil rights actions brought under § 1983, a federal court borrows the forum state's statute of limitations period for personal injuries. *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir.1992). In Texas, the applicable limitations period for personal injuries is two years. *See* Tex. Civ. Prac. and Rem.Code § 16.003(a) (Vernon 2010).

▮▮▮   Although Texas law governs the applicable limitations period, federal law governs when a cause of action accrues under § 1983. *Lavellee v. Listi*, 611 F.2d 1129, 1130 (5th Cir.1980). Under federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Id.* at 1131. The statute of limitations therefore begins to run when the plaintiff is in possession of the "critical facts that he has been hurt and who has inflicted the injury ...." *Id.*

In his *Spears* hearing testimony, Plaintiff testified unequivocally that medical staff denied his request for hormone treatment upon entering the TDCJ on February 2, 2007, when he arrived at the Estelle Unit. *See Spears* hearing testimony of Plaintiff. The cause of action therefore

accrued when he became aware that TDCJ medical staff would not provide him with hormone treatment—February 2,2007. He did not file his complaint against Defendants until July 24,2009, more than two years after the cause of action accrued. Complaint at 1. Since the Plaintiff failed to file his complaint within two years of the accrual of his cause of action, the Court must dismiss his complaint as barred by the statute of limitations pursuant to 28 U.S.C. § 1915(e).

### C. *Hormone Therapy*

■ Even assuming, *arguendo*, that Plaintiffs claim is not barred by limitations, Plaintiff fails to show evidence of a violation of his federal civil rights because he is not entitled to receive hormone therapy under the facts as alleged and developed at the *Spears* hearing. Accordingly, Plaintiffs claims must also be dismissed *sua sponte* for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e). In identifying and determining the extent of those federal rights retained by persons convicted of a crime and incarcerated, the Supreme Court has stated that:

> while persons imprisoned for crime enjoy many protections of the Constitution, it is also clear that imprisonment carries with it the circumscription or loss of many significant rights.... These constraints on inmates and in some cases the complete withdrawal of certain rights, are justified by the considerations underlying our penal system.... The curtailment of certain rights is necessary, as a practical matter, to accommodate a myriad of "institutional needs, and the objectives" of prison facilities, ... chief among which is internal security.

*Hudson v. Palmer*, 468 U.S. 517, 523, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (citations omitted).

Specifically addressing an inmate's right to medical care, the Supreme Court has stated that "[i]n order to state a cognizable claim [under the Eighth and Fourteenth amendments], a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Regarding Fourteenth Amendment claims, the Supreme Court has observed that:

> Far from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law.

*Daniels*, 474 U.S. 327, 332, 106 S.Ct. 662 (1986).

■ The Supreme Court has further stated that under the Eighth Amendment, "it is the obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, *supplying medical needs*, or returning order to a tumultuous cellblock." *Whitley*, 475 U.S. 312, 319, 106 S.Ct. 1078 (1986) (emphasis added). It is well established that negligence is insufficient to state a constitutional violation under either the Eighth or Fourteenth Amendments. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Estelle*, 429 U.S. at 105, 97 S.Ct. 285; *Partridge v. Two Unknown Police Officers*, 791 F.2d 1182, 1186 (5th Cir.1986); *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985). Mere negligence, no matter how egregious, will not support an action pursuant to sec-

tion 1983. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

Previously, the undersigned addressed the issue of whether an inmate in the IDCJ is entitled to hormone therapy as treatment for gender identity disorder in *Praylor v. TDCJ,* Civil No. W–04–CA–058. In *Praylor,* the undersigned concluded that hormone therapy was not constitutionally required for the Plaintiff, based in part upon testimony developed at a *Spears* hearing that the Plaintiff had not initiated the process for an operative sex change and did not qualify under the then existing policy for treatment. Further, this Court found that Plaintiffs disagreement with the non-hormonal treatment pursued by prison medical staff did not constitute a viable claim for deliberate indifference to serious medical needs under the Eighth Amendment.

The plaintiff in *Praylor* appealed the undersigned's decision to the Fifth Circuit who issued a decision at 423 F.3d 524 (5th Cir.2005) (*"Praylor I "*) which was later withdrawn and substituted for the decision in *Praylor v. TDCJ,* 430 F.3d 1208 (5th Cir.2005) (*"Praylor II "*). Initially, the Fifth Circuit decided to follow those circuits that determined transsexualism to be a serious medical need raising Eighth Amendment considerations, but held that such inmates do not have a constitutional right to hormone therapy. *Praylor,* 423 F.3d at 525–26. In affirming this Court's decision, the Fifth Circuit concluded that "the prison facility must afford the transsexual inmate some form of treatment based upon the specific circumstances of each case." *Id.* at 526. Shortly after their initial decision, the Fifth Circuit withdrew its decision in *Praylor I* and held "[a]ssuming, without deciding, that transsexualism does present a serious medical need, we hold that, on this record, the refusal to provide hormone therapy did not constitute the requisite deliberate indifference." *Praylor,* 430 F.3d at 1209.

Based upon *Praylor II,* there currently is no controlling precedent in the Fifth Circuit as to whether refusing hormone therapy to a person, diagnosed with gender dysphoria, violates the Eighth Amendment prohibition against cruel and unusual punishment. However, the Fifth Circuit does appear to imply that under certain facts the refusal to provide hormone therapy will not constitute deliberate indifference.

The appellate courts that have considered the issue have uniformly recognized gender dysphoria as a serious medical condition. *See De'Lonta v. Angelone,* 330 F.3d 630 (4th Cir.2003); *Cuoco v. Moritsugu,* 222 F.3d 99, 106 (2d Cir.2000); *Allard v. Gomez,* 9 Fed.Appx. 793, 794 (9th Cir. 2001); *Brown v. Zavaras,* 63 F.3d 967, 970 (10th Cir.1995); *White v. Farrier,* 849 F.2d 322, 325 (8th Cir.1988); *Meriwether v. Faulkner,* 821 F.2d 408, 413 (7th Cir.1987). Not a single decision, however, mandates hormone therapy. The manner of treatment is within the discretion of the prison. *Maggert v. Hanks,* 131 F.3d 670, 671 (7th Cir.1997); *Brown,* 63 F.3d at 970; *White,* 849 F.2d at 327–328; *Supre v. Ricketts,* 792 F.2d 958, 963 (10th Cir.1986). In limited circumstances, a Plaintiff may be entitled to hormone therapy in some jurisdictions. *South v. Gomez,* 211 F.3d 1275 (9th Cir.2000) (*approving* district court decision that an inmate was entitled to hormone therapy when all experts conceded Plaintiff (1) had gender dysphoria and (2) had already been taking hormone therapy prior to incarceration); *Phillips v. Michigan Dep't of Corrections,* 731 F.Supp. 792 (W.D.Mich.1990), *aff'd,* 932 F.2d 969 (6th Cir.1991) (termination of hormone therapy not appropriate where inmate had been previously diagnosed with gender dysphoria by a medical professional and was be-

ing treated with hormone therapy upon incarceration). The Seventh Circuit has suggested that an inmate might not be eligible for any curative treatment for gender dysphoria, if such treatment is cost prohibitive. *Maggert*, 131 F.3d at 672.

In the present case, the Court inquired at the *Spears* hearing as to whether the Plaintiff was receiving any treatment for gender disorder and whether the IDCJ has a policy for treatment of gender disorder. P.A. Bennett testified at the *Spears* hearing that Plaintiff was given mental health counseling for his gender disorder. Bennett also testified that Plaintiff was examined in accordance with IDCJ policy G–51.11. Policy G–51.11 is a IDCJ policy effective in January of 2006 "to provide guidelines to the unit health personnel in the management of offenders with gender disorders." Court's Exhibit No. 1 to *Spears* hearing. The policy provides for approval of hormone therapy under specific circumstances:

A. A confirmed parole or discharge date of 180 days will be provided to the approving authority. (This presumes that the patient will receive his/her operation immediately upon discharge).

B. Letters from the patient's free world physician and psychiatrist/psychologist stating that the patient has been on hormone therapy and that the patient had intended to have a sex change operation will be provided to the approving authority.

Bennett further testified that Plaintiff was examined in accordance with IDCJ policy G–51.11, and that he did not meet the requirements to receive hormone treatment which include a confirmed parole or discharge date of 180 days. *See* Court Exhibit 1. Plaintiff is not eligible for parole until November 30,2011, which is far more than 180 days hence. The Plaintiff argues that he is exempt from the 180 day requirement; however, the Court notes that

the policy has no stated exemptions. Therefore, the Plaintiffs exemption argument is without merit.

The policy also states that "those other who are experiencing significant psychological distress related to possible Gender Identification Disorder will be referred to the unit Mental Health Department for a mental health evaluation." *Id.* Bennett testified at the *Spears* hearing that Plaintiff was referred to the Mental Health Department on numerous occasions. He also stated that administration of hormone therapy would be counter-productive for the Plaintiff because, as an intact male, Plaintiff is still manufacturing testosterone and there is no medical necessity for hormone replacement treatment. Plaintiffs disagreement with the course of treatment pursued by prison medical staff does not constitute a viable claim for deliberate indifference to serious medical needs under the Eight Amendment. *Young v. Gray*, 560 F.2d 201, 201 (5th Cir.1977); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir.1985).

Based upon the existence of policy G–51.11, TDCJ appears to recognize gender disorder as a serious medical need. The policy provides hormone therapy in circumstances in which the inmate is close to release and committed to proceeding with a sex change operation immediately upon discharge. In the event an inmate is not yet eligible for hormone therapy, TDCJ refers the inmate to the Mental Health Department for a mental health evaluation and subsequent counseling, if necessary. The Court finds that the policy is reasonable and supports legitimate penological interests such as maintaining order and discipline within the prison unit. The Court further finds that the existence of policy G–51.11, coupled with adherence to the same in the case of the Plaintiff, is also evidence in and of itself that the Defendants were not deliberately indifferent to Plaintiffs serious medical needs under the Eighth Amendment.

### III. *Order*

After having carefully reviewed pleadings, it is ordered that Plaintiffs Complaint be DISMISSED pursuant to 28 U.S.C. § 1915(e)(2).

IT IS FURTHER ORDERED that any pending motions are hereby DENIED.